UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

E*TRADE FINANCIAL CORPORATION and    :
E*TRADE SECURITIES LLC,

        Plaintiffs,    :

    v.    :

MARCUS J. HERNANDEZ,    :
SEAN J. GAFFEY, and    :
BANC OF AMERICA    :
INVESTMENT SERVICES, INC.    :

        Defendants.    :

-------------------------------------------------------------- x

**08 CV 2993**

**COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF IN AID OF ARBITRATION**

Plaintiffs E*TRADE Financial Corporation and E*TRADE Securities LLC (jointly "E*TRADE"), in support of their Complaint for preliminary injunctive relief against Defendants Marcus J. Hernandez ("Hernandez"), Sean J. Gaffey ("Gaffey"), and Banc of America Investment Services, Inc. ("BOA"), state the following:

## NATURE OF THE CASE

1.    E*TRADE seeks an injunction to prevent Defendants' ongoing misuse of its confidential customer lists and financial information.  BOA and two former E*TRADE employees, Hernandez and Gaffey, are actively using E*TRADE's trade secret information to poach E*TRADE's customers, in violation of their employment agreements, and federal and state law.

2.    Hernandez and Gaffey recently joined BOA after working for years at E*TRADE.  While employed at E*TRADE, Hernandez and Gaffey stole E*TRADE's confidential customer information.  Then, upon joining BOA, they began systematically soliciting E*TRADE's most high-net-worth customers to transfer their accounts to BOA.

3.      To coerce the transfers, Hernandez and Gaffey engaged in a fear campaign: they told E*TRADE customers that E*TRADE was practically insolvent and that their assets were not safe. These assertions are false and constitute blatant scare tactics. Unfortunately, Defendants succeeded in part in inducing certain large customers to transfer their accounts to BOA.

4.      BOA, a direct competitor of E*TRADE, encouraged and facilitated Hernandez and Gaffey's illegal acts.

5.      E*TRADE seeks to enjoin Defendants' ongoing use of this confidential information to raid E*TRADE's customer base and to obtain the assets and business of E*TRADE's customers. Without an injunction, Defendants will continue to misuse E*TRADE's information and continue to cause E*TRADE irreparable loss of customers and assets.

6.      Rule 13804 of the NASD/FINRA Code of Arbitration Procedure for Industry Disputes authorizes E*TRADE to seek a preliminary injunction from this Court to maintain the status quo pending final resolution in arbitration. Contemporaneously with this filing, E*TRADE Securities LLC has filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") commencing an expedited arbitration against Defendants.

## THE PARTIES

7.      E*TRADE Financial Corporation ("E*TRADE Financial") is a Delaware corporation with its principal place of business in New York. E*TRADE Financial is the parent of a family of affiliated companies providing a variety of electronic financial services, including online brokerage services, banking, and mortgage services.

8.     E*TRADE Securities LLC ("E*TRADE Securities") is a Delaware limited liability company.  Its sole member is another Delaware limited liability company, and that entity's sole member is a Delaware corporation with its principal place of business in New York. E*TRADE Securities provides a full range of retail and institutional brokerage services, including online brokerage services and investment counseling services.  E*TRADE Securities is registered with FINRA under CRD No. 29106.

9.     Hernandez is a citizen of Pennsylvania, and is a former employee of E*TRADE. Hernandez is registered with FINRA under CRD No. 4218478, which lists his current place of employment as BOA.

10.     Gaffey is a citizen of New Jersey, and is a former employee of E*TRADE. Gaffey is registered with FINRA under CRD No. 4284044, which lists his current place of employment as BOA.

11.     BOA is a Florida corporation with its principal place of business in Boston, MA. BOA provides a wide range of financial services in direct competition with E*TRADE.  BOA is registered with FINRA under CRD No. 16361.

## JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are residents of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because part of the conduct at issue arose in this judicial district.

14.     This Court has personal jurisdiction over all Defendants. Hernandez and Gaffey have continuous and systematic contacts with New York because both were employed in E*TRADE's New York office, and the conduct at issue occurred in part in New York. BOA is a foreign corporation licensed to do business in New York, has a registered agent in New York, and conducts business in New York, including serving New York customers and maintaining offices in New York.

## FACTS

**A.     E*TRADE And BOA Are Direct Competitors In The Investment Advisory Business**

15.     The investment advisory and brokerage asset management industry is highly competitive and is built on the development of long-term relationships with clients.

16.     Because many products and services provided by competing firms offer similar capabilities and pricing, a client's decision to do business with a particular firm is often driven by the client's relationship with the firm.

17.     To build its business and maintain its reputation as a premier service provider, E*TRADE has expended substantial time, labor, and money to attract, develop, service and maintain relationships with its clients.

18.     E*TRADE's goodwill and business relationships with its customers and employees are a valuable asset.

19.     BOA is a direct competitor of E*TRADE in the investment advisory and brokerage asset management business.

**B.     E*TRADE Carefully Protected Its Confidential Customer Information**

20.     While employed at E*TRADE, Hernandez and Gaffey were financial advisors in E*TRADE's New York office, where they worked together until November 20, 2007. On that

date, Hernandez transferred to another E*TRADE branch in Pennsylvania. They both resigned from E*TRADE in early 2008.

21.    As financial advisors, Hernandez and Gaffey provided personalized investment strategies and advice to E*TRADE customers.

22.    At E*TRADE, Hernandez and Gaffey were entrusted with confidential and proprietary information and trade secrets ("Confidential Information") that included:

- Customer lists and prospects lists;
- Customers' account and personal financial information; and
- Internal strategic business, marketing, and financial information and plans.

23.    This Confidential Information is closely guarded and not available outside E*TRADE.

24.    To protect the secrecy of its Confidential Information, E*TRADE limits access to only those employees with a "need to know," and it requires these employees to sign agreements protecting the confidentiality of the Confidential Information.

25.    E*TRADE's financial advisors, including Hernandez and Gaffey, sign employment agreements and expressly agree to comply with E*TRADE's Code of Professional Conduct, which imposes, among other things, the following mandatory obligations:

- Not to disclose Confidential Information (which includes customer lists, business information, employee information, records, activities, plans, and the solicitation of clients and prospective clients) outside of E*TRADE;

- Not to use Confidential Information for personal benefit or to compete with E*TRADE;

- Not to remove Confidential Information from E*TRADE's premises while employed at E*TRADE;

- Not to disclose Confidential Information after the termination of an employee's employment at E*TRADE; and

- Not to remove or use E*TRADE's corporate property, including E*TRADE's business information, files, client lists, and e-mail, after the termination of an employee's employment at E*TRADE.

26.    On information and belief, BOA requires its financial advisors to sign similar agreements and to maintain the confidentiality of its proprietary information.

## C.    Hernandez's Employment Agreement And Confidentiality Obligations

27.    In October 2003, E*TRADE hired Hernandez as an investment specialist in its New York office.  His title later changed to financial advisor.

28.    On October 7, 2003, Hernandez and E*TRADE entered into an Employment Agreement, Proprietary Information and Inventions, and Arbitration of Employment Disputes ("Hernandez Agreement").

29.    Hernandez expressly acknowledged in the Hernandez Agreement that he understood "that [E*TRADE] possesses and will possess Proprietary Information which is important to its business."  Proprietary Information is "information that was developed, created, or discovered by or on behalf of [E*TRADE] . . . which has commercial value in [E*TRADE's] business."  This definition includes customer lists and other information that concern E*TRADE's actual or anticipated business.

30.    Hernandez also expressly acknowledged in the Hernandez Agreement that he understood "that [E*TRADE] possesses or will possess 'Company Documents and Materials' which are important to its business."  Company Documents and Materials are "[d]ocuments or other media or tangible items that contain or embody Proprietary Information or any other information concerning the business, operations or plans of the Company, whether such documents, media or items have been prepared by me or by others."  This definition includes customer lists.

- 6 -

31.    In Paragraph C of the Hernandez Agreement, Hernandez expressly agreed not to

remove any Company Documents and Materials from E*TRADE:

> All Company Documents and Materials are and shall be the
> sole property of the Company. *I agree that during my*
> *employment by the Company, I will not remove any*
> *Company Documents and Materials from the business*
> *premises of the Company* or deliver any Company
> Documents and Materials to any person or entity outside
> the Company . . . .  (Emphasis added.)

32.    Also in Paragraph C of the Hernandez Agreement, Hernandez expressly agreed to

return all Company Documents and Materials to E*TRADE upon termination of his

employment:

> I further agree that, immediately upon the termination of
> my employment by me or by the Company for any reason,
> or during my employment if so requested by the Company,
> I will return all Company Documents and Materials,
> apparatus, equipment and other physical property, or any
> reproduction of such property . . . .

33.    E*TRADE's Code of Professional Conduct was part of the terms and conditions

of Hernandez's employment, and Hernandez acknowledged that he reviewed it and agreed to

comply with its terms.

34.    E*TRADE's Code of Professional Conduct prohibited Hernandez from using or

disclosing E*TRADE's proprietary or confidential information for personal benefit or for the

benefit of a new employer:

> *You may not disclose proprietary or confidential*
> *information of [E*TRADE] or any third party outside of*
> *[E*TRADE] at any time, including after termination of*
> *employment. You may not take such proprietary or*
> *confidential information when leaving [E*TRADE] or*
> *use or disclose such information for your own personal*
> *benefit or for the benefit of your new employer or*
> *prospective new employer.* You may not permit its
> disclosure or use by any third party.  (Emphasis added.)

35.     At all times during Hernandez's employment at E*TRADE, Hernandez owed E*TRADE a fiduciary duty of loyalty.

**D.    Hernandez Misappropriates E*TRADE's Confidential Information And Trade Secrets**

36.     On information and belief, by November 2007, Hernandez wished to leave E*TRADE and obtain employment with an E*TRADE competitor.

37.     Unknown to E*TRADE, on November 19, 2007, while working in E*TRADE's New York office, Hernandez accessed E*TRADE's computer system and uploaded eight computerized spreadsheets ("Spreadsheets") for the illicit purpose of e-mailing them to his home e-mail account.

38.     The Spreadsheets that Hernandez took contained E*TRADE's Confidential Information and trade secrets, including:

- A client list containing personal information for 257 E*TRADE clients, including their names, addresses, telephone numbers, and account numbers.

- For 2006, a monthly and quarterly breakdown of the gross monetary production report for all E*TRADE financial advisors, including a detailed breakdown of how much of each type of financial product (such as mutual funds, CDs, and bonds) was sold by each financial advisor.

- For 2003-2006, a monthly breakdown of sales transactions categorized by date of transaction, type of investment sold, buy/sell information, and account information, including monthly summaries regarding gross/net sales figures.

- A spreadsheet that contains account numbers and other information concerning E*TRADE bond clients.

39.     The spreadsheet containing the breakdown of financial advisor production in 2006 listed Hernandez as the top producer and Gaffey as the fifth highest producer in the company.

40.     Effective November 20, 2007, Hernandez moved from E*TRADE's New York office to E*TRADE's Blue Bell, Pennsylvania office.

41.     On January 18, 2008, Hernandez resigned from E*TRADE without warning, effective immediately.  That very same day, Hernandez became an employee of BOA.

**E.    Hernandez's Improper Use Of E*TRADE's Confidential Information
And Intentional Misrepresentations About E*TRADE**

42.     Immediately after leaving E*TRADE, Hernandez used the biographical and financial information contained in the Spreadsheets to wrongfully solicit E*TRADE customers to move their accounts to BOA.

43.     Using E*TRADE's customer lists, Hernandez mailed E*TRADE customers letter solicitations and account transfer forms that they did not request.

44.     In an attempt to scare E*TRADE customers into moving their accounts to BOA, Hernandez made false and misleading statements about E*TRADE's solvency and the safety of these clients' assets.  Hernandez made these statements even though he knew that E*TRADE maintains multiple layers of insurance to protect the assets of the customer accounts that Hernandez serviced.

45.     In one instance, Hernandez called E*TRADE customer Frederick K. for the express purpose of soliciting him to move his accounts from E*TRADE to BOA.  Hernandez told Frederick K. that "E*TRADE was not secure and that his assets were in jeopardy."

46.     As a result of these scare tactics, some clients that Hernandez solicited moved their accounts to BOA.

47.     BOA benefited from, or actively encouraged, Hernandez's unlawful acts in obtaining E*TRADE's accounts, and is vicariously liable.

48.     Hernandez and BOA's wrongful conduct has damaged E*TRADE in amounts that are currently unquantifiable, but continuing.  This damage includes inciting client concerns about the safety, security and confidentiality of their personal financial information at E*TRADE,

concerns about non-E*TRADE personnel, including BOA and Hernandez having possession and control of their private financial information, and the false statements defendants spread regarding both E*TRADE's solvency and its ability to protect its customers' deposits.

**F.    Gaffey's Employment Agreement, Confidentiality, And Non-Solicitation Obligations**

49.    In October 2004, E*TRADE hired Gaffey as a retail sales representative in its New York City office.  Gaffey later moved to the position of financial advisor.

50.    On October 26, 2004, Gaffey and E*TRADE entered into an Agreement Regarding Employment and Proprietary Information and Inventions ("Gaffey Agreement").

51.    Gaffey expressly acknowledged in the Gaffey Agreement that he understood "that [E*TRADE] possesses and will possess Proprietary Information which is important to its business."  Proprietary Information is "information that was developed, created, or discovered by or on behalf of [E*TRADE] . . . which has commercial value in [E*TRADE's] business."  This definition includes customer lists and other information that concern E*TRADE's actual or anticipated business.

52.    Gaffey also expressly acknowledged in the Gaffey Agreement that he understood "that [E*TRADE] possesses or will possess 'Company Documents and Materials' which are important to its business."  Company Documents and Materials means "any kind of written, typewritten, printed or electronic media whatsoever that contain or embody Proprietary Information or any other information concerning the business, operations or plans of the Company, whether such documents, media or items have been prepared by me or by others."  This definition includes, but is not limited to, customer lists.

53.    In Paragraph D of the Gaffey Agreement, Gaffey expressly agreed not to remove any Company Documents and Materials from E*TRADE:

> *I agree that during my employment by the Company,*
> *I will not remove any Company Documents and Materials*
> *from the business premises of the Company* or deliver any
> Company Documents and Materials to any person or entity
> outside the Company . . . . (Emphasis added.)

54.    Also in Paragraph D of the Gaffey Agreement, Gaffey agreed to return all

Company Documents and Materials to E*TRADE upon termination of his employment:

> I further agree that, immediately upon the termination of
> my employment by me or by the Company for any reason,
> or during my employment if so requested by the Company,
> I will return all Company Documents and Materials,
> apparatus, equipment and other physical property, or any
> reproduction of such property . . . .

55.    For a period of two years after leaving E*TRADE's employment, Gaffey agreed

not to solicit E*TRADE's customers to terminate or diminish their relationship with E*TRADE.

Paragraph H of the Gaffey Agreement provides in relevant part:

> During the term of my employment and for two (2) years
> thereafter, *I will not, on behalf of myself or anyone else,*
> *directly or indirectly encourage or solicit or attempt to*
> *encourage or solicit any customers, clients, partners or*
> *affiliates of [E*TRADE] to terminate or diminish their*
> *relationship with [E*TRADE].*  I understand that I have an
> obligation not to use any customer lists or information from
> customer lists (which are included in the definition of
> Proprietary Information above) to directly or indirectly
> solicit business from any [E*TRADE] customer, whether
> for myself or anyone else.  (Emphasis added.)

56.    E*TRADE's Code of Professional Conduct was part of Gaffey's terms and

conditions of employment, and Gaffey acknowledged that he reviewed it and agreed to comply

with its terms.

57.    E*TRADE's Code of Professional Conduct prohibited Gaffey from using or

disclosing E*TRADE's proprietary or confidential information for personal benefit or for the

benefit of a new employer:

*You may not disclose proprietary or confidential information of [E\*TRADE] or any third party outside of [E\*TRADE] at any time, including after termination of employment. You may not take such proprietary or confidential information when leaving [E\*TRADE] or use or disclose such information for your own personal benefit or for the benefit of your new employer or prospective new employer.* You may not permit its disclosure or use by any third party. (Emphasis added.)

58.    At all times during Gaffey's employment at E\*TRADE, he owed E\*TRADE a fiduciary duty of loyalty.

### G.    Gaffey's Wrongful Solicitation Of E\*TRADE Customers And Intentional Misrepresentations About E\*TRADE

59.    On February 22, 2008, about one month after Hernandez resigned without notice from E\*TRADE, Gaffey resigned from E\*TRADE without notice, effective immediately. That day Gaffey became a Vice President at BOA.

60.    Immediately after leaving E\*TRADE, Gaffey repeatedly began soliciting E\*TRADE clients by telephone to move their accounts to BOA.

61.    In an attempt to scare E\*TRADE customers into moving their accounts to BOA, Gaffey also made false and misleading statements about E\*TRADE's solvency and the safety of these clients' assets.

62.    As a result of these scare tactics, some E\*TRADE clients that Gaffey solicited moved their accounts to BOA.

63.    BOA benefited from, or actively encouraged, Gaffey's illegal solicitation of E\*TRADE's customers, and is vicariously liable.

64.    Gaffey and BOA's wrongful conduct has damaged E\*TRADE in amounts that are currently unquantifiable, but continuing. This damage includes inciting client concerns about the safety, security and confidentiality of their personal financial information at E\*TRADE,

concerns about non-E*TRADE personnel, including BOA and Gaffey having possession and control of their private financial information, and the false statements defendants spread regarding both E*TRADE's solvency and its ability to protect its customers' deposits.

## H.    E*TRADE Will Continue To Suffer Irreparable Harm Without An Injunction

65.    Based on the foregoing, E*TRADE has demonstrated a likelihood of success on the merits, and a balancing of the equities favors the issuance of preliminary injunctive relief against Defendants.

66.    Unless Defendants are preliminarily enjoined from the conduct described above, E*TRADE will be irreparably harmed by, among other things:

- Loss of confidentiality of customer information, loss of confidentiality of customers' dealings with E*TRADE, loss of confidence and trust of customers;

- Loss of valuable existing and prospective customer relationships, loss of assets, destruction of E*TRADE's goodwill, and loss of business reputation;

- Disclosure of customer lists and other confidential and proprietary information, which is the sole property of E*TRADE; and

- Disruption of offices, by encouraging other companies to poach E*TRADE's trade secrets and customers.

67.    E*TRADE has no adequate remedy at law.

68.    The entry of preliminary injunctive relief against Defendants is in the public interest, and will not result in greater harm to Defendants than the harm E*TRADE has suffered and will continue to suffer.

<u>COUNT I</u>

**BREACH OF CONTRACT**
**(Hernandez and Gaffey)**

69.    E*TRADE incorporates by reference the allegations contained in paragraphs 1-68 of this Complaint as if set forth in their entirety.

70.    Hernandez and Gaffey are each parties with E*TRADE to valid and enforceable employment contracts, some terms of which survived Hernandez's and Gaffey's respective terminations of their employment with E*TRADE. The contracts included, among other things: (1) the terms and conditions of the Agreement, and (2) the terms and conditions of the Code of Professional Conduct.

71.    E*TRADE fully complied with its obligations under the parties' employment contracts, such that E*TRADE is entitled to expect and demand the full and faithful performance of their respective contracts.

72.    Hernandez and Gaffey each breached his respective employment contract. Hernandez and Gaffey misused E*TRADE's proprietary customer information in violation of their respective Agreements and the Code of Professional Conduct. Gaffey violated his Agreement by soliciting E*TRADE's customers after leaving E*TRADE.

73.    E*TRADE has suffered damages as a result of Hernandez and Gaffey's respective breaches.

74.    E*TRADE also has suffered and will continue to suffer irreparable harm as a result of Hernandez and Gaffey's respective breaches.

75.    Unless Hernandez and Gaffey are each restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT II

### BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### (Hernandez and Gaffey)

76.    E*TRADE incorporates by reference the allegations contained in paragraphs 1-75 of this Complaint as if set forth in their entirety.

77.    Hernandez and Gaffey each occupied positions of trust and confidence with E*TRADE.  They each had a fiduciary duty to refrain from diverting business opportunities away from E*TRADE, and to refrain from misappropriating and using E*TRADE's Confidential Information and trade secrets for their own benefit or the benefit of a third party.

78.    Hernandez and Gaffey each breached their fiduciary duty and duties of loyalty by copying and/or disclosing E*TRADE's confidential customers lists without authorization for the purpose of using those lists to solicit customers away from E*TRADE and to BOA.

79.    E*TRADE has suffered damages as a result of Hernandez and Gaffey's respective breaches of their fiduciary duties and duties of loyalty to E*TRADE.

80.    E*TRADE also has suffered, and will continue to suffer, irreparable harm as a result of Hernandez and Gaffey's respective breaches of their fiduciary duties and duties of loyalty to E*TRADE.

81.    Unless Hernandez and Gaffey are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT III

### MISAPPROPRIATION OF TRADE SECRETS
### (All Defendants)

82.     E*TRADE incorporates by reference the allegations contained in paragraphs 1-81 of this Complaint as if set forth in their entirety.

83.     E*TRADE developed its Confidential Information through substantial effort, and maintains them in strict confidence.  E*TRADE's Confidential Information, including its customer lists, constitutes trade secrets.

84.     Hernandez (on his own behalf and as an agent of BOA), Gaffey (on his own behalf and as an agent of BOA), and BOA (on its own, and under the doctrine of *respondeat superior*) have used E*TRADE's trade secrets in breach of express written agreements, in breach of confidential relationships and duties, and as a result of discovery by improper means.

85.     E*TRADE has suffered damages as a result of Defendants' misappropriation.

86.     E*TRADE also has suffered, and will continue to suffer, irreparable harm as a result of Defendants' misappropriation of trade secrets.

87.     Unless Defendants' are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### CONVERSION
### (All Defendants)

88.     E*TRADE incorporates by reference the allegations contained in paragraphs 1-87 of this Complaint as if set forth in their entirety.

89.    E*TRADE has a right to maintain the confidentiality of its proprietary information, including its customer lists.

90.    Hernandez (on his own behalf and as an agent of BOA), Gaffey (on his own behalf and as an agent of BOA), and BOA (on its own, and under the doctrine of *respondeat superior*) obtained possession of E*TRADE's Confidential Information without authorization.

91.    Defendants' actions violated E*TRADE's right to lawfully possess the information in confidence.

92.    Defendants' are obligated to return the Confidential Information to E*TRADE.

93.    E*TRADE has suffered damages as a result of Defendants' conversion.

94.    E*TRADE also has suffered, and will continue to suffer, irreparable harm as a result of Defendants' conversion of E*TRADE's property.

95.    Unless Defendants are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT V

## UNFAIR COMPETITION
### (All Defendants)

96.    E*TRADE incorporates by reference the allegations contained in paragraphs 1-95 of this Complaint as if set forth in their entirety.

97.    E*TRADE and BOA are direct competitors in the investment advisory business.

98.    Defendants' conduct, described above, constitutes acts of unfair competition.

99.    As a consequence of the foregoing, E*TRADE has suffered, and will continue to suffer, irreparable harm and loss.

- 17 -

100.    Unless Defendants are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT VI

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (All Defendants)

101.    E*TRADE incorporates by reference the allegations contained in paragraphs 1-100 of this Complaint as if set forth in their entirety.

102.    E*TRADE has ongoing and profitable business relationships with its brokerage and financial services customers.

103.    Defendants have knowledge of these relationships.

104.    Hernandez (on his own behalf and as an agent of BOA), Gaffey (on his own behalf and as an agent of BOA), and BOA (on its own, and under the doctrine of *respondeat superior*) interfered with these relationships by using dishonest, unfair and improper means.

105.    Defendants' actions have caused, and will continue to cause, actual breaches and disruptions of these contractual relationships.

106.    E*TRADE has suffered damages as a result of Defendants' actions.

107.    Unless Defendants are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT VII

### VIOLATION OF FEDERAL COMPUTER
### FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(a)
### (Hernandez and Gaffey)

108.    E*TRADE incorporates by reference the allegations contained in paragraphs 1-107 of this Complaint as if set forth in their entirety.

109.    Hernandez and Gaffey accessed E*TRADE's protected computer systems without authorization, or by exceeding their authorization.

110.    Hernandez's and Gaffey's access without authorization and/or in excess of their authorization was done so knowingly and/or with the intent to defraud E*TRADE.

111.    The unauthorized access furthered Hernandez and Gaffey's fraud on E*TRADE. They obtained E*TRADE's valuable proprietary information and interfered with the valuable opportunity for commercial relationships based on that information.

112.    E*TRADE has suffered damages as a result of Hernandez's and Gaffey's unauthorized access to E*TRADE's protected computer systems.

113.    E*TRADE also has suffered and will continue to suffer irreparable harm as a result of Hernandez and Gaffey's unauthorized access to E*TRADE's protected computer systems.

114.    Unless Hernandez and Gaffey are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, Hernandez's and Gaffey's conduct will continue to cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## COUNT VIII

### TRADE LIBEL, LIBEL *PER SE*, LIBEL *PER QUOD* AND SLANDER
### (All Defendants)

115.     E*TRADE incorporates by reference the allegations contained in paragraphs 1-114 of this Complaint as if set forth in their entirety.

116.     Hernandez (on his own behalf and as an agent of BOA), Gaffey (on his own behalf and as an agent of BOA), and BOA (on its own, and under the doctrine of *respondeat superior*) published and/or uttered false and defamatory statements to E*TRADE customers about E*TRADE.  These statements were not opinion, but were false statements of fact.

117.     The statements concerned the solvency of E*TRADE's existing business and services, and the safety of accounts maintained at E*TRADE.

118.     Defendants knew the statements were false, and/or recklessly disregarded their falsity, at the time they published and/or spoke these statements to E*TRADE customers.

119.     These false statements are the proximate cause of damage to E*TRADE's business and business reputation.

120.     E*TRADE has suffered pecuniary loss as a direct result from Hernandez's, Gaffey's and BOA's false statements.

121.     E*TRADE also has suffered, and will continue to suffer, irreparable harm as a result of Defendants' false and defamatory statements.

122.     Unless Defendants are restrained by an appropriate preliminary injunction pending arbitration of E*TRADE's claims, their conduct will cause E*TRADE immediate and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth in this Complaint, E*TRADE requests that the

Court enter a Preliminary Injunction Order providing:

1.      That Defendants, directly or indirectly, and whether alone or in concert with

others, including any officer, agent, employee and/or representative of BOA be enjoined and

restrained from:

        A.      Soliciting the business of any E*TRADE customer whom Defendants
Hernandez and Gaffey served, or whose name became known to
Defendants through E*TRADE's records;

        B.      Using, disclosing, or transmitting for any purpose, including the
solicitation of business, the information contained in the records of
E*TRADE, including but not limited to, the names, addresses, financial
information, investment objectives and account information of any
E*TRADE customer;

        C.      Destroying, erasing or otherwise making unavailable for further
proceedings in this matter, or in any arbitration proceeding between the
parties, any records or documents (including data or information
maintained in computer media) in Defendants' possession or control
which were obtained from or contain information derived from any
E*TRADE records; and

        D.      Aiding, abetting, or encouraging any other person or entity to do any of
the aforementioned acts.

2.      That Defendants, and anyone acting in concert or participation with Defendants

(including Defendants' counsel and any agent, employee, officer or representative of BOA or

any of its subsidiaries or affiliates), be ordered to return to Plaintiffs' counsel any and all records

or information pertaining to E*TRADE clients or business, and/or which were obtained by

Hernandez and Gaffey as a result of their employment with E*TRADE (whether in original,

copied, handwritten or any other form), and to purge any such information from their possession,

custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of the

Court's Order; provided, however, that any information in computerized or electronic form

(including, but not limited to, computers, BlackBerrys, Treos, Palm Pilots, mobile telephones and any other device in, or on, which data can be electronically stored) be provided by Defendants to their counsel within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order, and Defendants' counsel shall preserve the integrity of such devices and data and immediately make any and all such devices and data available for inspection and duplication by Plaintiffs' counsel and/or computer forensic consultants.

3.      Defendants are directed to identify all E*TRADE customers that they have solicited since terminating their employment with E*TRADE, or while in possession of E*TRADE's Confidential Information, or during the course of any wrongdoing set forth herein.

4.      That the Court set a reasonable bond to be posted on E*TRADE;

5.      That the Court award E*TRADE its attorney's fees and costs; and

6.      That the Court award such other relief that the Court may deem just and proper.

Dated:  March 24, 2008

Respectfully submitted,

COOLEY GODWARD KRONISH LLP

Douglas P. Lobel (DL-3894)
Robert T. Cahill
David A. Vogel
11951 Freedom Drive
Reston, Virginia 20190-5655
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100

_Laura Birger_
Laura Grossfield Birger (LB-3031)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

*Counsel for Plaintiffs E\*TRADE Financial
Corporation and E\*TRADE Securities LLC*

357245v4/RE