**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E*TRADE FINANCIAL CORPORATION and
E*TRADE SECURITIES LLC,

                          Plaintiffs,

-against-

MARCUS HERNANDEZ,
SEAN J. GAFFEY, and
BANC OF AMERICA INVESTMENT
SERVICES, INC.,

                          Defendants.

Civil Action No. 08 CV 2993 (RJH)

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10119
*Attorneys for Defendants Marcus Hernandez*
*and Sean J. Gaffey*

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD ............................................................................................... 7

LEGAL ARGUMENT .............................................................................................. 8

POINT I

    PLAINTIFFS CANNOT DEMONSTRATE  A LIKELIHOOD OF SUCCESS ON THE MERITS ..................................................................................................... 8

    I.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Succeed on the Merits of their Contract or Trade Secret Claims ................................................................. 8

        A.    California Law Applies to Plaintiffs' Contract Claim ............................. 8

        B.    California Law Allows Employees to Announce Their New Affiliations ................................................................................................ 9

        C.    Hernandez and Gaffey Did Not Misuse Any Trade Secrets Because Announcements Are Not Solicitations as a Matter of California Law ......................................................................................... 10

    II.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Claims for Breach of the Duty of Loyalty and Breach of Fiduciary Duty ..................................................................... 12

    III.    This Court Should Deny Plaintiffs' Application for Preliminary Injunction Because Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Conversion, Unfair Competition and Tortious Interference Claims ..................................................................... 13

    IV.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate A Likelihood of Success on the Computer Fraud Claims ............................................... 14

    V.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate A Likelihood of Success on the Libel/Slander Claims .................................................. 15

POINT II

    PLAINTIFFS HAVE FAILED TO ESTABLISH IRREPARABLE HARM .................. 16

POINT III

    THE BALANCE OF HARDSHIPS WEIGHS AGAINST INJUNCTIVE RELIEF ....... 19

POINT IV

    WAIVER, EQUITABLE ESTOPPEL, AND UNCLEAN HANDS ............................. 20

CONCLUSION ...................................................................................................... 21

Defendants Marcus J. Hernandez ("Hernandez") and Sean J. Gaffey ("Gaffey") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunctive Relief in Aid of Arbitration.

<u>PRELIMINARY STATEMENT</u>

In seeking preliminary injunctive relief, Plaintiffs have presented a highly distorted version of the facts and law. Plaintiffs accuse Messrs. Hernandez and Gaffey of "stealing" confidential information and "wrongfully soliciting" clients. Plaintiffs cite a number of prior New York court rulings, including requests for TROs on behalf of Banc of America Investment Services, Inc. ("BAI"), and describe the case at hand and these prior cases as "substantively identical lawsuits." In reality, nothing could be further from the truth.

Contrary to Plaintiffs' claims, the facts in this case are far different from those cited by Plaintiffs and Plaintiffs cannot meet their burden for preliminary injunctive relief. Indeed, at page 17 of their supporting memorandum, Plaintiffs cite two prior New York rulings and claim "[t]he employees had similar restrictions as Defendants here -- <u>commitments not to solicit BOA's [Bank of America] customers</u>, and promises not to take customer information from BOA." (emphasis added).

Here, however, <u>Defendant Hernandez never signed a non-solicitation covenant</u>. In *Salomon Smith Barney Inc. v. Hunte*, the New York Supreme Court denied a preliminary injunction, emphasizing: "Petitioner fails to make a prima facie showing of likelihood of success on the merits. Contrary to petitioner's contention, neither respondent is subject to a restrictive covenant." No. 121077/00 (N.Y. Sup. Ct. New York Co. 2000) (Exhibit "A"). The New York Supreme Court noted that both respondents had signed confidentiality agreements but, in the absence of a non-solicitation covenant, refused to enjoin either employee from soliciting Salomon Smith Barney clients. Likewise, in *McKay v. Communispond, Inc.*, the court refused to

enjoin the employee from soliciting clients, noting "[a]lthough defendant alleges that its form employment contract contains an anticompetitive clause, defendant has not produced a contract signed by plaintiff."  581 F. Supp. 801, 806 (S.D.N.Y. 1983).

Plaintiffs misleadingly fail to acknowledge that Hernandez never signed a non-solicitation covenant.  Instead, Plaintiffs inaccurately suggest the prior New York cases upon which they rely are "substantively identical" to the instant case.  That simply is not the case.

Even more glaring, Plaintiffs also ignore that the agreements signed by Messrs. Hernandez and Gaffey are governed by California law.  Incredibly, Plaintiffs—who bear the heavy burden of establishing their entitlement to a preliminary injunction—*do not cite a single California case* in their entire brief.  Plaintiffs' failure to cite any California law is fatal to their preliminary injunction application because California law differs from the law in virtually every jurisdiction in terms of what conduct is permissible by a departing employee.

Hernandez, of course, is not even subject to a non-solicitation covenant.  In *Rogerscasey, Inc. v. Nankof,* Judge Rakoff refused to enjoin the defendants from soliciting clients.  02 Civ. 2599, 2002 WL 726655 (S.D.N.Y. 2002), *aff'd,* 50 Fed. Appx. 461 (2d Cir. 2002).  Defendants in that case, like Hernandez, had signed a confidentiality agreement governed by California law; however, neither had signed a covenant not to solicit clients.  *Id.*  In refusing to enjoin the solicitation of clients, the Court held that "[t]he effect would be to transmute a prohibition against misappropriating trade secrets into a broad non-competition injunction . . . in seeming contravention of basic principles underlying the applicable California law."  *Id.* at *2.

Moreover, as discussed below, under California law, both Hernandez and Gaffey are *expressly permitted to contact clients to announce their new affiliations and to retain client information to carry out their announcements*.  Plaintiffs' reliance on New York cases, notwithstanding the California choice of law provision in the agreements they themselves

#1298644 v1
105839-62783

drafted, is completely unpersuasive.  Under the law governing this dispute, Plaintiffs simply are not entitled to preliminary injunctive relief.

Plaintiffs also admit that whether they are entitled to injunctive relief ultimately will be determined by an arbitration panel under the auspices of the Financial Industry Regulatory Authority ("FINRA").  In a recent FINRA case involving California law, the arbitrators denied injunctive relief.  In *A.G. Edwards & Sons, Inc. v. Slayden*, the Panel specifically noted that "[w]ith one exception, all individual respondents are subject to no contractual restriction against solicitation."  No. 07-02987 (November 2007) (Exhibit "B" at page 2, paragraph 5.IV).  Under California law, Hernandez's failure to sign a non-solicitation covenant—in and of itself—all but eliminates any claim by Plaintiffs for injunctive relief against him.

Notably, applying California law, the arbitrators denied injunctive relief against any of the departing employees, *including the one who had signed a non-solicitation covenant*.  The arbitrators held, *inter alia*, that "[c]ustomers have a paramount right to be advised of a move by their broker from one firm to another and this right includes receiving personal contact from their broker."  *Id.*

Furthermore, Plaintiffs' claim for preliminary injunctive relief against Gaffey (the only defendant who signed a non-solicitation covenant) is even weaker than in the *A.G. Edwards* case. In fact, Gaffey's branch manager encouraged him to leave E*Trade, discussed with Gaffey that he would *need to transfer his clients to a new firm*, and also discussed with Gaffey that he would *need to retain client information in connection with his move to a new firm*.  (*See* Declaration of Sean Gaffey ¶ 4).  Gaffey's branch manager at E*Trade was Jeffrey Wimer; the *same* person who submitted the Declaration in support of E*Trade's application for a preliminary injunction.

Even after Gaffey resigned, Jeffrey Wimer sent him a text message stating:  "You should get every account you want with no problem this place is a joke."  (See Gaffey

Declaration ¶ 4). Having explicitly sanctioned Gaffey's solicitation of clients and retention of client information, both before and after his resignation, E*Trade cannot seek to enjoin this very conduct now. Any rights E*Trade may have had against Gaffey under California law (which are much more limited to begin with) have been waived.[1] E*Trade also is equitably estopped from pursuing injunctive relief against Gaffey. Similarly, E*Trade also cannot credibly claim it will be "irreparably harmed" by conduct *its own manager explicitly approved*.

In addition to ignoring controlling California law and failing to acknowledge that Hernandez did not sign a non-solicitation covenant, Plaintiffs also grossly distort the facts in an effort to cast aspersions against Messrs. Hernandez and Gaffey. For instance, Plaintiffs suggest that Hernandez "misappropriated" E*Trade information by e-mailing it to his personal e-mail address on November 19, 2007. Hernandez, however, was transferring from E*Trade's New York City office to E*Trade's King of Prussia, Pennsylvania office the very next day, November 20, 2007.

As Hernandez makes clear in his Declaration, he used much of this information on a daily basis to service E*Trade accounts and was concerned about his immediate computer and e-mail access in the King of Prussia office. (*See* Hernandez Declaration ¶ 6). E*Trade also conspicuously fails to inform the Court that Hernandez e-mailed this information to his *E*Trade office e-mail address* with a copy to his home. This is confirmed by Exhibit "9" to the Declaration of Jeffrey Wimer.

Far from "surreptitiously" e-mailing client information, Hernandez merely copied his personal e-mail address so he could obtain the information he needed to conduct business *on*

---

[1]     As discussed *infra*, E*Trade also has waived any rights against Hernandez.

#1298644 v1
105839-62783

*behalf of E\*Trade* in the event he had no, or only limited, computer access in King of Prussia.[2] As confirmed by his Declaration, Hernandez never used this information to solicit clients and does not recall even opening any of the materials from his personal e-mail address.

Likewise, Plaintiffs' allegations that Hernandez and Gaffey are disparaging E\*Trade to clients is without merit.  Indeed, in November 2007, a Citigroup analyst reported there was a chance E\*Trade could become insolvent.  (*See* Hernandez Declaration ¶ 8).  In response, scores of E\*Trade clients called both Hernandez and Gaffey to express their *own* concerns about the financial viability of E\*Trade.  (*See* Hernandez Declaration ¶ 8; Gaffey Declaration ¶ 6).  E\*Trade's 10-K filing confirms that "[d]uring November 2007, well-publicized concerns about the Bank's holding of asset-backed securities led to widespread concerns about our continued viability. . ."  (*See* Exhibit "B" to the Hernandez Declaration).  E\*Trade's 10-K also notes that these concerns "led to a disruption in our customer base."  (*Id*.).  In fact, in Gaffey's case, approximately $200 million (30%) of the client assets he managed transferred out to other firms. (*See* Gaffey Declaration ¶ 6).  E\*Trade's financial viability was a widespread concern among E\*Trade clients for months before Hernandez and Gaffey resigned.

Jeffrey Wimer's sworn claim that Hernandez and Gaffey were "falsely stating or implying that the assets of E\*Trade customers were at risk" (Wimer Declaration ¶ 47) also is demonstrably false.  (*See, e.g.,* Gaffey Declaration ¶ 6: "I consistently told clients that even assuming a worst case scenario of bankruptcy, they would still be able to transfer out their monies to another firm.").

Plaintiffs' failure to prove that Hernandez or Gaffey violated any of their obligations under California law is only one of the many reasons their injunctive application is without

---

[2]    Obviously, if Hernandez had intended to secretly misappropriate this client information, he never would have e-mailed it to his E\*Trade office at the same time he e-mailed it to his personal e-mail address.

#1298644 v1
105839-62783

merit.  In that regard, Plaintiffs' inordinate delay in seeking a preliminary injunction—a month after Gaffey resigned and nearly 2 ½ months after Hernandez resigned—severely undermines their claims of "irreparable harm" and is yet another reason injunctive relief is wholly inappropriate.  Indeed, in virtually every case upon which Plaintiffs rely, the employer sought extremely prompt relief.  By contrast, where (as here), employers have delayed in asserting any rights, injunctive applications consistently have been denied by the courts.

E*Trade also is barred from obtaining preliminary injunctive relief based on the doctrines of unclean hands, waiver and equitable estoppel.  Ironically, while accusing Hernandez and Gaffey of disparaging E*Trade, the exact opposite is true.  In particular, at least one E*Trade financial advisor defamed Hernandez, falsely alleging that Hernandez had "illegally contacted" a client.  (*See* Hernandez Declaration ¶ 9).  Since Hernandez did not sign a non-solicitation covenant, and California law expressly permits even those employees who are subject to a non-solicitation covenant to contact clients regarding their new affiliations, there was nothing "illegal" at all about Hernandez's contacts with clients.

Moreover, a key component of Hernandez and Gaffey's compensation were 12(b)(1) fees; "trails" on business previously booked with the firm.  For many years, E*Trade failed to pay Hernandez or Gaffey any of this compensation.  (*See* Hernandez Declaration ¶ 12; Gaffey Declaration ¶ 9).  Even when E*Trade finally paid this compensation, it failed to provide Hernandez and Gaffey with any accounting to ensure they had been properly paid, and also paid them no interest for the years that it had improperly converted their compensation.  (*Id*.).  Being fully and properly compensated for their services constituted the entire consideration for any covenants entered into by Hernandez and Gaffey. E*Trade cannot seek to enforce agreements where, as here, it failed to provide the agreed-upon consideration for the agreements.

#1298644 v1
105839-62783

In sum, under the relevant facts and controlling law, Plaintiffs clearly are not entitled to preliminary injunctive relief.

## **LEGAL STANDARD**

A preliminary injunction is an extraordinary remedy that is not routinely granted. *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986); *The Deal, LLC v. Korangy Pub., Inc.*, 309 F. Supp. 2d 512, 520 (S.D.N.Y. 2004); *Earthweb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 308 (S.D.N.Y. 1999). This is because a "preliminary injunction grants the plaintiff a measure of his final relief in advance of proving that he is entitled to final relief." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburg*, 934 F.2d 30, 33 (2d Cir. 1991).

In order to obtain a preliminary injunction, a movant must demonstrate (1) irreparable harm in the absence of an injunction, (2) a likelihood of success on the merits or sufficiently serious questions on the merits to make them fair for litigation, and (3) a balance of hardships tipping decidedly in the moving party's favor. *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002). The moving party has the burden of proving each of these elements. *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983).

Even where a party can establish all of these requirements, injunctive relief nonetheless will be denied if that party has waived its rights, is equitably estopped from pursuing such relief or has unclean hands. Here, E*Trade cannot meet the traditional requirements for injunctive relief and is barred by waiver, equitable estoppel, and unclean hands.

#1298644 v1
105839-62783

## LEGAL ARGUMENT

## POINT I

## PLAINTIFFS CANNOT DEMONSTRATE
## A LIKELIHOOD OF SUCCESS ON THE MERITS

I.    **This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Succeed on the Merits of their Contract or Trade Secret Claims**

   A.    **California Law Applies to Plaintiffs' Contract Claim**

Plaintiffs' moving papers conveniently have overlooked the critical fact that this dispute is governed *exclusively* by California law.  The employment agreements of both Hernandez and Gaffey contain the following broad, unambiguous choice of law clause:

> Although I may work for the Company outside of California or the United States, I understand that this Agreement ***shall be*** interpreted and ***enforced in accordance with the laws of the State of California.***

(See Wimer Declaration, Exhibit 5 at paragraph N, and Exhibit 13 at paragraph Q) (emphasis added).

Therefore, all claims relating to Defendants' agreements are governed by California law. *Production Resource Group, L.L.C. v. Oberman*, 2003 WL 22350939, at *8 (S.D.N.Y. 2003) ("Where the parties to a contract have expressly agreed that the laws of a particular jurisdiction will govern that contract, New York courts will generally honor the parties' choice of law so long as the selected jurisdiction has sufficient contacts to the transaction.") (*citing Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996)); *see also Iron Mtn. Info. Mgt, Inc. v. Taddeo*, 455 F. Supp, 2d 124, 132 (E.D.N.Y. 2006) ("issues relating to the validity, interpretation

#1298644 v1
105839-62783

and performance of the contractual restrictive covenants between Iron Mountain and Taddeo are governed by Massachusetts law, based on the parties' contractual choice of law provision.").[3]

### B.    California Law Allows Employees to Announce Their New Affiliations

As emphasized above, Hernandez did not sign a non-solicitation covenant.  Plaintiffs fail to cite any California case to support the issuance of a preliminary injunction against a departing financial advisor not bound by any non-solicitation covenant.  Plaintiffs, in fact, do not cite any California cases at all.

Moreover, there is no competent evidence before the Court that *either* Defendant actually solicited E*Trade clients, as opposed to announcing their new affiliations with BAI.  Under well-settled California law, announcing a change in employment to customers is *not* a solicitation, and even employees who are subject to a non-solicitation covenant are free to announce their new affiliations to clients.  *Hilb, Rogal & Hamilton Ins. Svcs. of Orange Cty. v. Robb*, 33 Cal. App. 4th 1812, 1821 (2d Dist. 1995) (*citing Aetna v. Bldg. Maintenance Co. v. West*, 39 Cal.2d 198, 204, 246 P.2d 11, 15 (1952)).[4]

In fact, in his Declaration, although Jeffrey Wimer claims he reviewed "notes" that "indicate that many customers reported that they had been solicited by via telephone and in writing . . ." (Wimer Decl. ¶ 46), he fails to attach any such notes to his Declaration.  Wimer also claims "mailings to customers are *believed* to contain Transfer of Account ("TOA") forms already filled in with the customer's information (see Wimer Declaration ¶ 46), but once again fails to attach any mailings or to identify even a single client to whom any such mailing was sent.

---

[3]    Plaintiffs' reliance upon New York law (and other jurisdictions outside of California) in enforcing their claims thus are irrelevant and simply wrong.  New York law does not govern this dispute, nor do the laws of Maryland, Pennsylvania, Ohio, or Virginia.

[4]    In *Aetna*, the California Supreme Court allowed the employee to make multiple announcements, including face-to-face meetings with his former clients.

#1298644 v1
105839-62783

In addition, the California Supreme Court has expressly held that discussing business upon the invitation of the client does not constitute solicitation. *Aetna*, 39 Cal. 2d at 204, 246 P.2d at 15. Similarly, in *Hilb*, the California Court of Appeals held that the former employer failed to show a likelihood of success on the merits when it based its claim on the employee's announcement of his change in affiliation and a subsequent response to the clients' request to move their accounts to his new employer. 33 Cal. App. 4th at 1821-22.

Of course, it bears repeating that Hernandez did not sign a non-solicitation covenant at all. Even if he had, Hernandez's contacts with E*Trade clients and his transmission of account transfer forms to clients who requested them are completely permissible under California law. Likewise, under controlling California law, Gaffey is expressly allowed to announce his new affiliation and to conduct business with any E*Trade clients who express an interest in doing so.

**C.    Hernandez and Gaffey Did Not Misuse Any Trade Secrets Because Announcements Are Not Solicitations as a Matter of California Law**

Plaintiffs also cannot show a likelihood of success on the merits of their trade secret misappropriation claim because, as a matter of California law, departing representatives are permitted to utilize client information to announce their new affiliations. The agreements signed by Hernandez and Gaffey set forth the parties' obligations regarding "Proprietary Information" and define what information E*Trade deems to be "trade secrets." (See Wimer Declaration, Exh. 5, ¶ A; Exh. 13, ¶ A). Therefore, Plaintiffs' trade secret claims, just like their contract claims, are governed by California law pursuant to the parties' choice of law provision. *See, e.g., Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022 at *4-5, n.6 (S.D.N.Y. Mar. 31, 2006) (applying California law to related tort claims pursuant to choice of law provision in contract).

#1298644 v1
105839-62783

In *Hilb*, the defendant insurance broker left the plaintiff insurance brokerage firm to join a competing firm. The defendant informed plaintiff's customers of this transition and the plaintiff sought a preliminary injunction preventing the defendant from using plaintiff's client lists to make such announcements. *Id.* at 1320-21. The appellate court overturned the trial court's issuance of a preliminary injunction. The court held that plaintiff could not demonstrate a likelihood of success on the merits because plaintiff could not show any misuse of trade secrets or other unlawful conduct:

> In this case, even assuming that Hilb's customer list and other client information constitute trade secrets—an issue we do not decide—the evidence before the trial court does not support the conclusion that Robb misused them. *He lawfully informed some of Hilb's clients of his change in employment and then complied with their instructions to move their accounts or to seek a quote on a desired type of insurance.* Because Robb *could legitimately conduct business in this manner,* those clients could provide him with the type of information included in the trial court's injunction. In other words, *assuming that the information possessed about its clients … is a trade secret, nothing in the [Uniform Trade Secret Act] prohibits the client itself from providing that information to Robb.*

*Hilb*, 33 Cal. App. 4th at 1821-22, 33 Cal. Rptr.2d at 892 (emphasis added). What Hernandez and Gaffey have done since leaving E*Trade is entirely consistent with California law. (See Hernandez Declaration ¶ 3; Gaffey Declaration ¶ 3).

Furthermore, under California law, "the right to announce a new affiliation, *even to trade secret clients of a former employer is basic to an individual's right to engage in fair competition.*" *Hilb*, 33 Cal. App. 4th at 1821 (emphasis added); *see also Reeves v. Hanlon*, 33 Cal. 4th 1140, 1156, 95 P.3d 513, 522 (2004) (". . .the UTSA [Uniform Trade Secrets Act] does not forbid an individual from announcing a change of employment, even to clients on a protected trade secret client list"); *Am. Credit Indemn. Co. v. Sacks*, 213 Cal. App. 3d 622, 636 (1989)

#1298644 v1
105839-62783

("[T]he right to announce a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition.").

Hernandez and Gaffey in no way concede that E*Trade's client information is entitled to trade secret protection under California law. *A.G. Edwards & Sons, Inc. v. Slayden*, No. 07-02897 (November 2007) (Exhibit "B" at page 2, paragraph 5.V.) (FINRA panel in California ruled that "[b]asic information such as customer names, addresses and telephone numbers are neither confidential nor trade secret information.").

Even assuming, *arguendo*, that E*Trade's client information is trade secret information, Hernandez and Gaffey still were perfectly within their rights in using client information to announce their new affiliations with BAI, and also in accommodating any clients who wanted to discuss business or transfer their accounts to BAI. *Rogerscasey Inc.*, 2002 WL 726644, at *3 (when plaintiff was unable to demonstrate that the "customer list" that it sought to protect as a trade secret was "misused" under California law, Judge Rakoff denied plaintiff injunctive relief). Briefly stated, neither Hernandez nor Gaffey has "misused" any E*Trade information.  To the contrary, their use of client information to announce their new affiliations is expressly permitted under controlling California law.

## II.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Claims for Breach of the Duty of Loyalty and Breach of Fiduciary Duty

Plaintiffs' breach of loyalty and breach of fiduciary duty claims also are governed by California law and are equally without merit. *FTI Consulting Inc. v. Graves*, 2007 WL 2192200, at *9-10 (S.D.N.Y. 2007) (holding that because New York law regards the employer-employee relationship as one of contract and that fundamental to that relationship is the duty of loyalty, the

#1298644 v1
105839-62783

breach of loyalty claim was governed by the choice of law provision contained in the employment agreement).[5]

For all the reasons discussed above, Plaintiffs cannot show a likelihood of success on the merits of their breach of duty of loyalty and breach of fiduciary duty claims.  Neither Defendant misused any trade secret information.  E*Trade also does not allege that Hernandez or Gaffey solicited clients before their departures.  Hernandez and Gaffey merely exercised their explicit rights under California law.

**III.    This Court Should Deny Plaintiffs' Application for Preliminary Injunction Because Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits of Their Conversion, Unfair Competition and Tortious Interference Claims**

The Uniform Trade Secrets Act ("UTSA") pre-empts any remaining common law claims "that are based on the same conduct which could support a UTSA cause of action."  *Convolve, Inc.*, 2006 WL 839022, at *7 (S.D.N.Y. 2006).  Therefore, Plaintiffs' remaining common law claims—conversion (Count IV), unfair competition (Count V), and tortious interference (Count VI)—each of which is based on a misuse of trade secrets, *all are pre-empted* by UTSA under California law.  *Id.*

Even if this Court were to conclude that Plaintiffs' remaining common law claims are not pre-empted by UTSA, the broad choice of law provisions in the Defendants' agreements requires that all of these derivative tort claims be governed by California law.   *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (applying a similar choice of law provision, the Second Circuit held that "this language is sufficiently broad to cover tort claims as well as contract claims 'arising out of or relating to' the [contract]"); *see also Convolve, Inc.*, 2006 WL

---

[5]      Additionally, the agreements for both Hernandez and Gaffey contain an express Duty of Loyalty provision, which, by virtue of the choice of law provision, must be "interpreted and enforced" pursuant to California law (See Wimer Declaration, Exhibit 5 at paragraph H, Exhibit 13 at paragraph K).

#1298644 v1
105839-62783

839022, at *4-5, n.6 (applying California law to tort claims pursuant to choice of law provision in contract).

Critically, as is the case with their other claims, Plaintiffs fail to cite a *single* California case in support of their claims for unfair competition, conversion, or tortious interference. Since Hernandez and Gaffey acted entirely consistent with California law, Plaintiffs cannot demonstrate a likelihood of success on the merits of any of these claims.

**IV.    This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate A Likelihood of Success on the Computer Fraud Claims**

Count VII alleges a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a) ("CFAA"), which states in pertinent part that whoever "knowingly accessed a computer without authorization or exceeding authorized access" violates the CFAA. Neither Hernandez nor Gaffey accessed Plaintiffs' protected computer systems without authorization, nor did they exceed their authority to access those systems.

This particular claim is premised, in large part, on Hernandez's e-mailing certain materials to his personal e-mail account a couple of months before his departure. The materials that Hernandez e-mailed to his personal account, however, included information he used on a daily basis to service E* Trade accounts. (See Hernandez Declaration ¶ 6). Upon transferring to E*Trade's King of Prussia, Pennsylvania office from New York City, as a precaution, Hernandez e-mailed these materials to his personal e-mail account, *simultaneous with e-mailing them to his E*Trade office*. (*Id.*). Hernandez never intended to "misuse" E*Trade's client information. Hernandez merely e-mailed this information to his personal e-mail account to ensure he could adequately *perform his duties to E*Trade* and never used it to compete against E*Trade.

#1298644 v1
105839-62783

V.    **This Court Should Deny Plaintiffs' Application for a Preliminary Injunction Because Plaintiffs Cannot Demonstrate A Likelihood of Success on the Libel/Slander Claims**

Lastly, Count VIII alleges trade libel, libel *per se*, libel *per quod*, and slander against Defendants based upon alleged false and defamatory statements to Plaintiffs' customers regarding E*Trade's financial condition (See Complaint ¶¶ 116 - 117).  As a preliminary matter, courts have long held that equity will not enjoin defamation.  *See, e.g., Metropolitan Opera Association, Inc. v. Local 100*, 239 F.3d 172, 177 (2d Cir. 2001); *San Antonio Community Hosp. v. S. Cal. Dist. Council of Carpenters*, 137 F.3d 1090, 1092 (9th Cir. 1998) (internal citations omitted).

In any event, Plaintiffs cannot prevail on any such claim because Hernandez and Gaffey did not make any defamatory statements to customers (See Hernandez Declaration ¶ 8; Gaffey Declaration ¶¶ 5-6).  Furthermore, E*Trade itself *admitted* to its perilous financial condition (see Hernandez Declaration ¶ 11; Gaffey Declaration ¶ 8), and confirmed that clients closed their accounts as a direct result of the financial crisis surrounding E*Trade.

Therefore, even if such statements were made, truth is an absolute defense to defamation, and Plaintiffs are not likely to succeed on the merits.  *Posner v. Sprint/United Management Co.*, 478 F. Supp. 2d 550, 560 (S.D.N.Y. 2007) ("Under New York law it is fundamental that truth is an absolute, unqualified defense to a civil defamation action, and substantial truth suffices to defeat a charge of libel.") (citations omitted); *Matthews v. Malkus*, 377 F. Supp. 2d 350, 357 (S.D.N.Y. 2005) (same); *Lucas v. Citizens Community Co.*, 244 Fed. Appx. 774, 778 (9th Cir. 2007) (same) (internal citations omitted).

In sum, Plaintiffs cannot establish a "likelihood of success on the merits or sufficiently serious questions on the merits to make them fair for litigation."  Accordingly, Plaintiffs' motion for preliminary injunction is without merit.

15

## POINT II

## PLAINTIFFS HAVE FAILED TO ESTABLISH IRREPARABLE HARM

Plaintiffs also have failed to establish irreparable harm.  For this reason as well, their motion for a preliminary injunction is without merit.  In their brief, Plaintiffs rely on prior New York cases but fail to recognize the crucial factual distinctions between these other cases and the case at bar.  Most significantly, as the Second Circuit emphasized in *Citibank, N.A., et al. v. City Trust and CityTrust Bancorp, Inc.*, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic action."  756 F.2d 273, 276 (2d Cir. 1985).  In *Citibank*, the Second Circuit vacated the district court's preliminary injunction where Citibank waited ten weeks after a competitor had opened a competing office before filing for preliminary injunctive relief.  In particular, the Second Circuit held that "Citibank's failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary injunctive relief and suggests that there is, in fact, no irreparable injury'."  756 F.2d at 277 (*quoting Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602 (S.D.N.Y. 1979)).

Here, in the case of Hernandez, E*Trade similarly delayed nearly 10 weeks in seeking preliminary injunctive relief.  Equally important, Jeffrey Wimer admits in his Declaration he was aware of facts supporting E*Trade's application *on the same day Hernandez resigned*.  E*Trade concedes Hernandez resigned on January 18, 2008.  (See Jeffrey Wimer Declaration ¶ 29). According to Wimer, "[p]ursuant to E*TRADE policy, I checked Hernandez's email account *on the day of his resignation to determine if he had improperly sent any E*TRADE Confidential Information to a non-E*TRADE email account*."  (See Jeffrey Wimer Declaration ¶ 30)

#1298644 v1
105839-62783

(emphasis added).  Wimer proceeds to allege that he "discovered" that Hernandez had e-mailed client information to his personal e-mail account.

Yet, despite discovering Hernandez's alleged "improper conduct" on January 18, 2008,[6] E*Trade failed to pursue its preliminary injunction application – or even to file suit – until late March.  E*Trade's 10-week delay in seeking preliminary injunctive relief against Hernandez clearly "suggests that there is, in fact, no irreparable injury."  *See Citibank; see also Magnet Communications, LLC v. Magnet Communications, Inc.*, 2001 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. 2001) (in denying preliminary injunction, Judge Owen held that a delay of twelve weeks in pursuing relief "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.").

It is also worth noting that, no later than February 1, E*Trade was fully aware that Hernandez was contacting clients.  In response to a letter regarding these contacts, Hernandez's counsel called E*Trade's counsel to discuss, inter alia, what basis E*Trade could have for taking issue with Hernandez's contacts with clients.  E*Trade's counsel never returned the call.  (See Hernandez Declaration at paragraph 7).  Having not received a return phone call, Hernandez's counsel called E*Trade's counsel a second time.  Once again, E*Trade's counsel never returned the call.  (*Id*.).  Then, nearly another two months later, E*Trade finally filed suit, claiming "irreparable harm" and the need for "immediate" relief.  E*Trade's very lengthy delay in suing Hernandez severely undermines (and, in fact, eliminates) its claim of irreparable harm.

Although E*Trade's delay in suing Gaffey was not quite as long (around a month), this delay is exacerbated by the explicit representations of E*Trade's manager Jeffrey Wimer to

---

[6]      Of course, Hernandez did nothing improper in simultaneously e-mailing information to his personal and office e-mails to ensure he could perform his job duties for E*Trade.

Gaffey both before and after his resignation.  Not only did E*Trade refrain from filing litigation against Gaffey, E*Trade's own manager discussed leaving the firm *with Gaffey*, discussed the fact that Gaffey would need to transfer his clients to a new firm and also would need to retain client information, and sent Gaffey a text message after Gaffey resigned saying that "[y]ou should get every account you want with no problem this place is a joke."  (See Gaffey Declaration ¶ 4).

Plaintiffs' reliance on other cases finding irreparable harm, without any discussion of the specific facts involved, is completely unpersuasive.  Indeed, in virtually every case Plaintiffs rely upon, the securities firm promptly sought relief to enforce its rights.  For instance, in *Merrill Lynch v. Rahn*, the brokers resigned on October 22, 1999 and Merrill Lynch sought injunctive relief only four days later, on October 26, 1999.  The emergency judge issued a TRO within days and Judge Berman then granted a preliminary injunction on November 2, 1999; 11 days after the resignations.  73 F. Supp. 2d 425 (S.D.N.Y. 1999) (E*Trade's memorandum in support of preliminary injunctive relief at page 14)

Similarly, in *Merrill Lynch v. Bradley*, the Fourth Circuit noted that "[a]n injunction even a few days after solicitation has begun is unsatisfactory. . ." 756 F.2d 1048, 1054 (4th Cir. 1985) (E*Trade's memorandum at page 14).  Here, Plaintiffs waited nearly 10 weeks before suing Hernandez and a month before pursuing any relief against Gaffey.  The very case upon which Plaintiffs rely makes clear any injunction at this late date could serve no purpose.

At the same time they filed this action, Plaintiffs also filed a Statement of Claim with FINRA.  In addition to seeking permanent injunctive relief, Plaintiffs have requested a "separate damages hearing" to recover "compensatory damages in an amount to be determined at a subsequently scheduled hearing" and "[p]unitive damages in an amount to be determined at the

#1298644 v1
105839-62783

damages hearing."  (See Exhibit "C"'; pertinent excerpt from E*Trade's FINRA Statement of Claim).

Regardless of this Court's ruling on the preliminary injunction motion, E*Trade still can pursue its claims for compensatory and punitive damages.  Under the specific facts of this case, however, particularly E*Trade's inordinate delay in seeking relief and the explicit representations by E*Trade's branch manager to Gaffey, Plaintiffs have failed to satisfy their burden of proving irreparable harm.  Accordingly, no injunction should issue.

## POINT III

## THE BALANCE OF HARDSHIPS WEIGHS AGAINST INJUNCTIVE RELIEF

Plaintiffs also cannot meet their burden of proving that a balance of the hardships "decidedly tips" in their favor.  Indeed, the balance of hardships weighs in Defendants' favor.  In regards to Hernandez, he never signed a non-solicitation covenant.  Now, nearly 10 weeks after he resigned, Plaintiffs seek to enjoin him, *inter alia*, from soliciting E*Trade clients, (i) without any covenant, (ii) without citing even a single California case, and (iii) with no evidence Hernandez even solicited clients (as opposed to announcing his new affiliation).

In Gaffey's case, the E*Trade manager specifically approved Gaffey's removal of client information and his contacts with E*Trade clients, both before and after Gaffey's resignation from the firm.  It is highly inequitable for Plaintiffs to turn around and file suit when Gaffey did nothing more than what his own E*Trade manager expressly endorsed and without presenting any competent evidence that he violated any of his obligations under California law.

In short, Plaintiffs bear the burden of proving all three requirements for a preliminary injunction.  They cannot satisfy any of the three requirements and the motion for a preliminary injunction should be denied.

19

## POINT IV

### WAIVER, EQUITABLE ESTOPPEL, AND UNCLEAN HANDS

Plaintiffs' claims also are barred by the doctrines of waiver, equitable estoppel, and unclean hands. In *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, Judge Cote held that "[w]aiver under federal law will be recognized where 'parties were aware of their rights and made the conscious choice, for whatever reason, to waive them.'" 2006 U.S. Dist. LEXIS 20787, at *109 (S.D.N.Y. 2006) (*quoting Mooney v. City of New York*, 219 F.2d 123, 131 (2d Cir. 2000)).

E*Trade unquestionably was aware of its rights against Gaffey. Yet, before Gaffey even resigned, E*Trade's New York City branch manager discussed with Gaffey that he should transfer his clients and retain client information in the event he left E*Trade. He also encouraged Gaffey to leave the firm with him. Clearly, E*Trade made the "conscious choice" to waive any rights against Gaffey.[7]

E*Trade also waived any rights against Hernandez. As emphasized above, Jeffrey Wimer swore in his Declaration that he was aware of an alleged "breach" by Hernandez the same day Hernandez resigned from E*Trade. Nevertheless, E*Trade waited nearly 10 weeks to file suit against Hernandez.

E*Trade also has unclean hands, yet a further bar to injunctive relief. In *Estate of John Lennon v. Screen Creation, Ltd.*, Judge Baer held that "[a] court may deny injunctive relief based on the defense of unclean hands 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the

---

[7]    In *Juicy Couture*, the Court also noted that "[t]he doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct'." 2006 U.S. Dist. LEXIS 20787 at *108 (*quoting Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004)). E*Trade also is barred from seeking any relief against Gaffey under the doctrine of equitable estoppel.

#1298644 v1
105839-62783

detriment of the other party."  939 F. Supp. 287, 293 (S.D.N.Y. 1996) (citations omitted).  Judge Baer held that "the record sufficiently supports Leggoons' unclean hands defense.  Therefore, as a court of equity, I must deny plaintiffs' motion for a preliminary injunction."  *Id*. at 294.

In this case, Plaintiffs have unclean hands in many respects.  E*Trade made false and defamatory statements to at least one client that Hernandez was "illegally contacting" the client.  In addition, to the extent E*Trade now contends Gaffey's contacts with clients are somehow improper, Jeffrey Wimer's representations to Gaffey (both prior to and subsequent to his resignation) were deceitful and it would be unconscionable for Plaintiffs to seek preliminary injunctive relief against Gaffey.

Finally, E*Trade also failed to pay both Hernandez and Gaffey a portion of their compensation for years.  It is the epitome of bad faith and unconscionable behavior to try and enforce agreements after having failed for years to pay a significant portion of the compensation serving as consideration for the very same agreements.

## CONCLUSION

In sum, Plaintiffs have not come close to fulfilling the traditional requirements for a preliminary injunction.  To the contrary, they cannot establish any of those requirements.  Plaintiffs' application for a preliminary injunction also is barred by the doctrines of waiver, equitable estoppel and unclean hands.

Accordingly, for all of the foregoing reasons, Messrs. Hernandez and Gaffey respectfully request that Plaintiffs' application for a preliminary injunction be denied.

#1298644 v1
105839-62783

Dated:    April 10, 2008
          New York, New York

                                      **GIBBONS P.C.**
                                      One Pennsylvania Plaza, 37th Floor
                                      New York, New York 10119
                                      (212) 613-2000
                                      *Attorneys for Defendants*
                                      *Marcus J. Hernandez and Sean J. Gaffey*


                              By: _____/s/ Paul A. Saso_____
                                        Paul A. Saso

#1298644 v1
105839-62783

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
PART 57

———————————————————————————x     Index No. 121077/00

SALOMON SMITH BARNEY INC.,

Plaintiff(s),

-against-                                              DECISION/ORDER

DAVID HUNTER and MARK STANCZYK,

Defendant(s).

———————————————————————————x

Petitioner Salomon Smith Barney Inc. ("SSB") brings this action for a preliminary

injunction against respondents Hunter and Stanczyk, financial consultants who resigned from their

employment with SSB, effective October 6, 2000, to take employment with Prudential Securities

Inc. Petitioner has commenced an arbitration proceeding before the National Association of

Securities Dealers, Inc. ("NASD"). In this action, petitioner moves, pursuant to CPLR 7502(c),

to restrain respondents, pending determination of the NASD arbitration, from "servicing or

accepting any business or account transfers from SSB accounts acquired by reason of improper

solicitation facilitated through the use of SSB confidential and/or proprietary information or

conduct." Respondents cross-move to stay this action pending the NASD arbitration.

A preliminary injunction will be granted "only where the movant shows a likelihood of

success on the merits, the potential for irreparable injury if the injunction is not granted and a

balance of equities in the movant's favor (Grant Co. v. Srogi, 52 NY2d 496, 517; McLaughlin.

Piven, Vogel v. Nolan & Co., 114 AD2d 165, 172, lv denied 67 NY2d 606)." Chernoff Diamond
& Co. v. Fitzmaurice, Inc., 234 AD2d 200, 201 [1ˢᵗ Dept 1996].)

In the instant case, petitioner contends that respondents violated written agreements as
well as common law and fiduciary obligations to SSB in that they wrongfully copied and/or
retained confidential and proprietary SSB documents, including customer lists and customer
account information, and "are undoubtedly soliciting SSB clients to transfer their accounts to
Prudential." (Aff. of Frank Albanese In Support, dated Oct. 10, 2000, ¶¶ 5, 12.) Respondents
deny that they removed any original files from SSB. They acknowledge that they have client
information but contend that this information pertains to their own clients, and that they "have
every right to maintain such information." They further contend that they "have no information
that originated with Smith Barney nor any information relating to clients of other Smith Barney
brokers." (Aff. of David Hunter, dated Oct. 16, 2000, ¶ 15; Aff. Of Mark Stanczyk, dated Oct.
16, 2000, ¶ 18.)

Petitioner fails to make a prima facie showing of likelihood of success on the merits.
Contrary to petitioner's contention, neither respondent is subject to a restrictive covenant.
Petitioner argues that Stanczyk, though not Hunter, signed employment agreements containing
restrictive covenants which bar Stanczyk's solicitation of clients he serviced while at SSB.
However, neither of the two agreements signed by Stanczyk (a Financial Consultant Contract and
Franchise Protection Program agreement) is currently in effect.

Nor do the SSB Employee Handbooks show SSB's entitlement to a preliminary
injunction. Both respondents signed receipts for an Employee Handbook, dated March 26, 1998,
stating that they "agree[d] to be bound by the Travelers/Salomon Smith Barney Principles of

2

Employment." The Principles of Employment, in turn, specifically precluded disclosure of confidential or proprietary information to anyone not affiliated with SSB, provided that employees would not take any confidential records upon termination of employment with SSB, and broadly defined confidential and proprietary information so as to include "client documents" and "client lists."

However, the mere fact that the SSB Handbooks defined customer lists or information as confidential will not serve to preclude use of the lists by former employees. Under well settled authority, customer lists will not be protected from use by a former employee absent evidence that the lists were developed as the result of effort and expense on the employer's part and contain information which the employee could not have obtained apart from the employment. (See, McLaughlin, Piven, Vogel v. Nolan & Co., 114 AD2d 165, supra; Town & Country House & Home Serv. v. Newbery, 3 NY2d 554 [1958].)

Even restrictive covenants are not enforceable to protect an employer's "entire client base." (BDO Seidman v. Hirshberg, 93 NY2d 382, 391 [1999].) While a restrictive covenant may be enforceable as to clients who were developed at the employer's expense, such a covenant will not be applied to "personal clients of [the employee] who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts, which [the employer] neither subsidized nor otherwise financially supported as part of a program of client development." (Id. at 393.) Clearly, an Employee Handbook can give an employer no greater protection from a former employee's use of client information than would be tolerated under a restrictive covenant.

Petitioner fails, however, to make a showing of likelihood of success on the merits of its claim that the clients serviced by respondents were developed as a result of SSB's effort and

3

expense. Petitioner's claim that it developed the customer lists whose use it seeks to enjoin is based on the wholly conclusory assertion that it spent millions of dollars on advertising and mailings to potential clients. (Albanese Aff., ¶ 41.) Petitioner does not deny respondents' claim that they brought with them virtually all or most of their existing clients when they left other brokerage firms to join SSB. Moreover, petitioner does not deny respondent Hunter's claim that only 20 percent of his clients were opened at SSB, or respondent Stanczyk's claim that a substantial portion of his clients were clients he had prior to his employment with SSB. (Hunter Aff., ¶ 10; Stanczyk Aff., ¶ 12).[1]

Nor does petitioner show that the equities preponderate in its favor. Petitioner does not dispute respondents' averments that at the time they joined SSB, SSB requested copies of the account statements for their clients from their prior firms, and that SSB sent "welcome letters" to all of respondents' existing clients along with account transfer forms. (Hunter Aff., ¶ 8; Stanczyk Aff., ¶ 12.) SSB's failure to deny that it engaged in such conduct raises serious questions as to whether SSB is barred by the doctrine of unclean hands from seeking equitable relief from this Court. (See, Salomon Smith Barney Inc. v. Vockel, US Dist Ct, ED Pa, May ___, 2000, Bartle, J., 2000 US Dist Lexis 6167.)

The court further holds that SSB fails to show that it will suffer irreparable injury if a

---

[1] Questions as to whether SSB itself regards customer information as confidential are raised by its failure to explain the certifications of Robert Calabrese and William Leahey, apparently submitted in prior litigation, opposing enforcement by another brokerage firm of a restrictive covenant in an employment agreement signed by a broker hired by SSB's predecessor. In these statements, SSB's predecessor took the position that account executives "almost always take virtually all of their customers with them to their new firm," that they have a right to take a copy of account information with them, and that this information is not in fact "a 'customer list' or proprietary confidential information of Smith Barney" but "belongs to the customers themselves." Calabrese Aff., ¶¶ 8, 15."

4

preliminary injunction is not granted. Petitioner has an adequate remedy at law, as any loss of

client business may be adequately addressed by money damages. (See Merrill Lynch, Pierce,

Fenner & Smith v. DeLiniere, 572 F Supp 246 [ND Ga 1983]; Morgan Stanley Dean Witter v.

Petit, US Dist Ct, ND Ga, 99-CV-2292, Sept. 10, 1999, Hunt, J.)

IT IS ACCORDINGLY HEREBY ORDERED, that the temporary restraining order,

rendered on October 11, 2000, is hereby vacated; and it is further

ORDERED, that petitioner's motion for a preliminary injunction is denied without

prejudice to petitioner's right, if so advised, to seek injunctive relief before the NASD; and it is

further

ORDERED, that respondents' cross-motion is denied as moot.

This constitutes the decision and order of this Court.

Dated: New York, New York
       November 1, 2000

MARCY FRIEDMAN, J.S.C.

FILED

NOV 0 9 2000

NEW YORK
COUNTY CLERK'S OFFICE

5

EXHIBIT B



FINRA

Financial Industry Regulatory Authority

## Order on Request for Permanent Injunction

**An in-person or telephonic hearing on a request for Permanent Injunction under FINRA rules was held in the matter of:**

CLAIMANT: A.G. Edwards & Sons, Inc

RESPONDENTS: Stifel, Nicolaus & Co., Inc., Kelly A. Stomgren , Cathy Elaine McJilton , Denise S. Gilseth, Samuel D. Slayden

CASE #: 07-02897

The hearing was held on  October 29-30, 2007 and on November 15-16, 2007. The follow individuals participated in the hearing: [list the attending individuals]

Chairperson: __Harry B. Endsley

Panelist: _____Ralph A. Cotton, CPA

Panelist: _____E. Duane Stephens

Claimant's Representative: __Anthony Paduano, Esq.

#1 Respondent's Representative: _Joseph Dougherty, Esq.

#2 Respondent's Representative: ___ Kenneth C. Mennemeier, Esq. _____

At the hearing for permanent injunction, the following occurred:

1. Respondent __Stifel, Nicolaus & Co., Inc. did not file its answer to the statement of claim.

2. Respondents Kelly A. Stomgren, Cathy Elaine McJilton, Denise S. Gilseth, and Samuel D. Slayden did not file their answer to the statement of claim.

3.    The parties accepted the Panel's composition.

4.  In determining the request for permanent injunction, the Panel used the following legal standard:

The law of state where the events occurred.

5.  On Claimant A.G. Edwards & Sons, Inc.'s request for permanent injunction, the Panel rules as follows:

The Panel DENIES the request.

Further the Panel rules as follows:

I. Customer rights are of primary importance and the Panel is concerned that customers are, or may be, subject to harm due to this dispute.

II. The fiduciary duties owed by the parties to the customers are superior to any duties owed by employees to their former employer.

III. Customers have a paramount right to be advised of a move by their broker from one firm to another and this right includes receiving personal contact from their broker.

IV. With one exception, all individual respondents are subject to no contractual restriction against solicitation.  As to the exception, the issue is factually irrelevant

V. Basic information such as customer names, addresses and telephone numbers are neither confidential nor trade secret information.

The Panel therefore Orders that the Temporary Restraining Order and Preliminary Injunction issued by Judge William Alsup, United States District Court for the Northern District of California, on October 15, 2007, and amended on or about November 15, 2007, be DISSOLVED and DENIES the Claimant's request for a permanent injunction, subject to the following additional orders:

A. All individual respondents may retain and utilize the "redacted browse lists," as referenced in the hearings, presently in their possession.

B. Respondent Denise Gilseth may retain and utilize her Microsoft Outlook Contacts file.

C. Respondent Kelly Stromgren is instructed to delete the Microsoft Excel spreadsheet files from her computer(s), as referenced in the hearings.

D. The Panel has decided to bifurcate the final hearing to be held in this matter. The first hearing will be on the issue of liability only and, if liability is then found, the dates for the hearing on damages will be set at that time by the Panel. The Panel intends for the initial hearing on liability to be held within the month of January.

E. Counsel for the parties shall participate in a conference call with the Panel to be organized by FINRA within the next fourteen (14) days in order to resolve any pending discovery issues and to set the specific date(s) for the initial hearing on liability.

6. If the parties settle this matter with no further hearings:

   a. The cost of this permanent injunction hearing and any other hearing, including initial Pre-hearing conference or Pre-hearing conference, will be borne as follows:

   Claimant is assessed 100%

---

NOTE: FINRA rules[2] provide that chairperson shall receive $375.00 for a single session and $700 for each double session on the permanent injunction, while panelists shall receive $300 for each single session and $600 for each double session. The Rule provides that the parties shall equally pay the difference between regular and the injunctive relief honorarium[3] and that the arbitrators may reallocate this additional amount among the parties in the award. *This increased honorarium applies only to hearings for permanent injunction and does not apply to Pre-hearing conferences or additional hearings on damages or other issues.*

FINRA rules[4] provides that the parties shall jointly bear an arbitrator's reasonable travel-related costs and expenses for required travel to a hearing location other than the arbitrator's primary hearing location(s). The arbitrator may reallocate such costs and expenses among the parties in the award.

If a member firm fails to satisfy an invoice, FINRA Dispute Resolution will debit the member firm's CRD account.

---

[2] Industry Code: Rule 13804(b)(6)(c); Old Code: Rule 10335(b)(6)(c)
[3] Industry Code: Rules 13214 and 13804(b)(6)(c)
[4] Industry Code: Rule 13804(b)(6)(A); Old Code: Rule 10335(b)(6)(A)

This Order will remain in effect unless amended by the Panel.

Dated: November 20, 2007

_____
Harry B. Endsley, Chair

_____
Ralph A. Cotton, Panelist

_____
E. Duane Stephens, Panelist

This order will remain in effect unless amended by the arbitration panel.

Dated:


_____

Harry B. Endsley,  Chair


_____

Ralph A. Cotton,  Panelist

_____

E. Duane Stephens, Panelist

nov 21, 2007

EXHIBIT C



information, investment objectives and account information of any
E*TRADE's customer;

    c.    Publishing or speaking false and/or misleading information about
E*TRADE; and

    d.    Aiding, abetting, or encouraging any other persons or entities to do any of
the aforementioned acts;

3.    ***Separate Damages Hearing:***  Compensatory damages in an amount to be

determined at a subsequently scheduled hearing, pursuant to FINRA Rule 13804(c);

4.    Punitive damages in an amount to be determined at the damages hearing;

5.    Award of all costs of arbitration, including forum fees;

6.    ***Attorneys' Fees:***  Reasonable attorneys' fees and costs pursuant to the Panel's

equitable power arising from Respondents' egregious conduct in breaching their Agreements,

engaging in unfair competition, and in manipulating the fears of the public for their own benefit;

and

7.    All other relief the Panel deems appropriate.

Sincerely,

Douglas P. Lobel, Esq.
COOLEY GODWARD KRONISH LLP
One Freedom Square
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Counsel for E*TRADE Securities LLC*

357869 v1/RE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E\*TRADE FINANCIAL CORPORATION and
E\*TRADE SECURITIES LLC,

                    Plaintiffs,

              -against-

MARCUS J. HERNANDEZ, SEAN J. GAFFEY,
and BANC OF AMERICA INVESTMENT
SERVICES, INC.,

                    Defendants.

Civil Action No. 08 CV 2993 (RJH)

**CERTIFICATE OF SERVICE**

---

I, Paul A. Saso, hereby certify that on this 10th day of April, 2008, Defendants Marcus J. Hernandez and Sean J. Gaffey's Memorandum of Law in Opposition to Plaintiffs' Application for a Preliminary Injunction, the Declaration of Marcus Hernandez with exhibits thereto and the Declaration of Sean Gaffey with exhibits thereto, were electronically filed with the Court and served via the Court's electronic case filing system as well as via email upon counsel for Plaintiffs as follows:

Robert T. Cahill, Esq.
Douglas Paul Lobel, Esq.
David A. Vogel, Esq.
Laura Grossfield Birger, Esq.
**Cooley Godward Kronish LLP**
Counsel for Plaintiffs
E\*Trade Financial Corporation and E\*Trade Securities LLC

s/ Paul A. Saso