**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

E*TRADE FINANCIAL CORPORATION and
E*TRADE SECURITIES LLC,

               Plaintiffs,

-against-

MARCUS HERNANDEZ,
SEAN J. GAFFEY, and
BANC OF AMERICA INVESTMENT
SERVICES, INC.,

               Defendants.

---

Civil Action No. 08 CV 2993 (RJH)

 

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO VACATE THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, INCREASE THE INJUNCTION BOND

 

**GIBBONS P.C.**
One Pennsylvania Plaza
New York, New York 10119-3701
(212) 613-2000

        -and-

**COSS & MOMJIAN, LLP**
111 Presidential Blvd., Suite 233
Bala Cynwyd, Pennsylvania 19004
(610) 667-6800

*Attorneys for Defendants Marcus Hernandez
and Sean J. Gaffey*

#1301505 v1
105839-62783

Defendants Marcus J. Hernandez ("Hernandez") and Sean J. Gaffey ("Gaffey") respectfully submit this Memorandum of Law in Support of Their Motion to Vacate the Court's Preliminary Injunction Or, In the Alternative, To Increase the Injunction Bond.

## PRELIMINARY STATEMENT

Plaintiffs have demonstrated a remarkable lack of candor towards the Court.  In seeking injunctive relief, Plaintiffs explicitly represented that "[t]his relief is particularly appropriate because FINRA will conduct an expedited hearing *within 15 days of the Court granting the relief.*"  (Plaintiffs' Memorandum in Support of a Preliminary Injunction at 13) (emphasis added).  At oral argument on the afternoon of April 16, 2008, Plaintiffs' counsel reiterated that expedited hearings would take place within 15 days of the Court's Order: "Last point, your Honor, on the FINRA rules, the rule is that the Court can enter a preliminary injunction pending an expedited hearing.  The FINRA rules require that that hearing be within 15 business days." (Tr. of 4/16/08 Hearing at 39 attached as Exhibit "B" to the Saso Declaration).[1]

After explicitly assuring this Court, however, both in their brief and at oral argument, that expedited hearings would take place within 15 days, Plaintiffs' counsel secretly contacted FINRA – on an *ex parte* basis – to request that an expedited hearing not commence within 15 days.  Defendants' counsel was not aware of this improper conduct until after Plaintiffs' counsel had secretly contacted FINRA and (at least preliminarily) succeeded in delaying the expedited hearings.

Attached as Exhibit "C" to the Saso Declaration is a letter from Plaintiffs' counsel to FINRA dated April 17.  In it, Plaintiffs' counsel states that "[o]ur understanding from

---

[1]     The FINRA Code actually requires expedited hearings within 15 *calendar* days (not business days).  (A copy of FINRA Code Section 13804(b)(1) is attached as Exhibit "A" to the Declaration Paul Saso, Esq.).

#1301505 v1
105839-62783

conversations[2] with your office is that the 15-day period for the expedited arbitration will not begin running until the final motion involving Mr. Reilly is resolved on May 5th." (emphasis added). Mr. Reilly is another former E*Trade representative who lives and works 3000 miles away in California and whom E*Trade is trying to bring before FINRA in New York City to defend himself in the same arbitration pending against Messrs. Hernandez and Gaffey. Plaintiffs' counsel never informed this Court that they would push for this Court's Preliminary Injunction Order to remain in effect for at least 15 days after the federal court in California decides whether or not to grant an injunction against another representative not joined in the action before this Court. (Saso Declaration at paragraph 4).

Because the preliminary injunction hearing involving Mr. Reilly is not scheduled to be heard by the United States District Court for the Central District of California until May 5, 2008, even if the California federal court were to rule from the bench, the expedited hearings would not commence until May 20; over one month after the issuance of this Court's preliminary injunction. It also is entirely possible the California federal court will not rule on the injunctive application for days or even weeks, delaying the expedited hearings even longer.

Plaintiffs' *ex parte* efforts, immediately after the preliminary injunction hearing, to delay the expedited hearings well beyond 15 days are extremely troubling. Undoubtedly, Plaintiffs *never* informed FINRA – in any of these *ex parte* communications – that they had explicitly assured this Court that Mr. Hernandez and Mr. Gaffey would have an opportunity to present their case to the arbitrators in 15 days.

Even more disturbing, it appears Plaintiffs' counsel knew – *at the time he made his representations in open court* – that his clients would attempt to delay the expedited arbitration

---

[2] Clearly, Plaintiffs' counsel had more than one *ex parte* communication with FINRA. Defendants' counsel was not even aware of, much less privy to, any of them.

#1301505 v1
105839-62783

hearings. Indeed, in reviewing the hearing transcript, we note that Plaintiffs' counsel suggested there "can be some minor modifications to the FINRA rule requiring expedited hearings with 15 days of any injunctive order." (Saso Declaration, Exhibit "B"; Tr. of 4/16/08 Hearing at 39).

This was completely disingenuous as well. FINRA Code Section 13804(b) provides for no "minor modifications." (Saso Declaration; Exhibit "A"). Notably, in their own brief to the Court, Plaintiffs make absolutely no mention of any "minor modifications."[3] Nonetheless, despite their express assurances to the Court that expedited hearings would take place within 15 days, Plaintiffs immediately and *secretly* contacted FINRA multiple times in their efforts to delay the expedited hearings.

Furthermore, it appears that Plaintiffs also have not complied with their obligation to post a bond of $100,000. As Judge Cote noted in *In re Worldcom, Inc. Secs. Litig. Master File*, under Federal Rule of Civil Procedure 65(c), "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." 354 F. Supp. 2d 455, 470 (S.D.N.Y. 2005). Judge Cote held that "[t]his Rule 'thus allows a preliminary injunction to become effective only upon the applicant's positing of an amount that the district court determines adequate'." *Id.* (quoting *Corning, Inc. v. PicVue Electronics, Ltd.*, 365 F.3d 156, 158 (2d Cir. 2002)).

The Court should be advised that Mr. Hernandez and Mr. Gaffey have fully complied with the Court's preliminary injunction despite Plaintiffs' failure to post a bond. In fact, out of respect for the pending Court proceedings, Defendants' counsel instructed Mr. Hernandez and

---

[3]     Obviously, delaying the expedited hearings for weeks hardly qualifies as a "minor modification" in any event.

#1301505 v1
105839-62783

Mr. Gaffey to refrain from initiating any contact with clients they previously serviced (including any announcements) very shortly after this action was filed in late March. By contrast, Plaintiffs have not complied with their explicit obligation under the Court's Order (and the Federal Rules of Civil Procedure). Even more egregious, Plaintiffs' representations to this Court concerning the timing of the expedited proceedings were false.

## ARGUMENT

I.    **The Court Should Vacate the Preliminary Injunction Because Plaintiffs' Subsequent Conduct Tips the Equities in Favor of Defendants and Because Plaintiffs Now Have Unclean Hands**

As the Court noted, one of the requirements for a preliminary injunction is that the plaintiff prove "a balance of hardships tipping decidedly in the moving party's favor." *Random House, Inc. v. Rosetta Book LLC*, 283 F.3d 490, 491 (2d. Cir. 2002). We strongly submit the equities no longer tip "decidedly" in Plaintiffs' favor. To the contrary, it is clear Plaintiffs intend to delay the expedited hearings involving Mr. Hernandez and Mr. Gaffey as long as possible, despite the explicit representations made to the Court to obtain injunctive relief. Knowing their odds of obtaining any injunctive relief from the arbitrators is negligible, Plaintiffs are trying to delay the expedited hearings in order to reap the benefits of the Court's injunction during the unwarranted delay in the arbitration hearings.

Crucially, in their own reply brief, Plaintiffs stated that FINRA arbitrators "are not required to be lawyers or to strictly apply case law." (Plaintiffs' Reply Brief at 9). Citing a NASD (now FINRA) newsletter, Plaintiffs further emphasized: "Arbitrators are not strictly bound by case precedent or statutory law. Rather, they are guided in their analysis by the underlying policies of the law and are given wide latitude in their interpretation of legal concepts." (*Id.* at footnote 6).

#1301505 v1
105839-62783

In cases where representatives were never asked to sign non-solicitation covenants, as is the case for Mr. Hernandez, arbitrators repeatedly have refused to grant permanent injunctive relief barring solicitation of clients. As previously noted, in *A.G. Edwards & Sons, Inc. v. Slayden, et al.*, No. 07-02987 (November 2007), involving California law, the arbitrators refused to grant permanent injunctive relief against any of the respondents; including the sole respondent who *had* signed a non-solicitation covenant. (Exhibit "B" to Defendants' Memorandum in Opposition to a Preliminary Injunction).

Indeed, FINRA arbitrators have refused to enjoin representatives from soliciting customers in the absence of a non-solicitation covenant with virtual unanimity. *See, e.g., Citigroup Global Markets, Inc. v. Janney Montgomery Scott LLC, et al.*, No. 03-00486 (2004) (Exhibit "D" to the Saso Declaration). Defendants do not cite these adverse FINRA rulings in an effort to re-argue this Court's Order. They clearly reveal, however, the motivation behind Plaintiffs' *ex parte* efforts to delay the expedited hearings involving Messrs. Hernandez and Gaffey.

In *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the Second Circuit emphasized at the outset that "Plaintiffs [the departing representatives] took with them customer lists and other records used to service clients." 910 F.2d 1049, 1050 (2d Cir. 1990). Still, a New York City panel of NYSE arbitrators denied *all* injunctive relief. In fact, the NYSE panel "ordered Merrill Lynch to return to each plaintiff 'the copies of his customer records.'" *Id.* at 1055. The Second Circuit held that the two departing representatives had been "fully vindicated on the central issue in the case." *Id.*

Plaintiffs will be hard-pressed to provide the Panel with even a handful – if any – FINRA rulings granting a firm injunctive relief in the absence of a non-solicitation covenant. While

#1301505 v1
105839-62783

Plaintiffs argue these prior awards are not "binding", they clearly will be persuasive to the Panel.

In *Banc of Am. Invest. Servs., Inc. v. Lehman Bros., Inc.*, the arbitration panel denied permanent injunctive relief to Banc of America Investment Services, Inc. even though the departing representative *had signed a non-solicitation covenant*. No. 04-00303 (2004) (Exhibit "E" to the Saso Declaration). The arbitrators concluded that the representative "had been given the impression that he was working without a non-compete, non-solicitation clause; therefore, the panel's decision is that there was no non-compete, non-solicitation clause in effect." (*Id.*, page 1, at paragraph 2).

Here, Hernandez had no covenant at all, and Plaintiffs' branch manager gave Gaffey the clear and unmistakable impression he could retain customer records and solicit customers. *Compare A.G. Edwards & Sons, Inc. v. Slayden, et al.*, No. 07-02987 (November 2007) (FINRA panel denied permanent injunctive relief against departing representatives, including sole respondent who had signed a non-solicitation covenant).

Plaintiffs explicitly assured this Court expedited hearings would occur within 15 days. Those assurances were untrue, and Mr. Hernandez and Mr. Gaffey now face the prospect of waiting many more weeks to be heard by the FINRA arbitrators; all as a result of the Plaintiffs' disingenuous, dilatory, and *ex parte* tactics. To make matters even more unfair, Plaintiffs have not even complied with their obligation under the Order to post a bond. Messrs. Hernandez and Gaffey respectfully submit the balance of hardships no longer tilt "decidedly" in Plaintiffs' favor.

Plaintiffs' conduct also constitutes unclean hands. *See, e.g., Estate of John Lennon v. Screen Creation, Ltd..*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (in denying injunction, Judge Baer held that "[a] court may deny injunctive relief based on the defense of unclean hands

'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." (citations omitted)). Plaintiffs' inaccurate representations to this Court, coupled with their *ex parte* efforts to persuade FINRA to delay the expedited hearings, were deceitful, unconscionable, and in bad faith.

A party seeking equity must do equity. Plaintiffs have not acted in an equitable manner. Accordingly, Mr. Hernandez and Mr. Gaffey respectfully request that the Court vacate the preliminary injunction.

## II.    Alternatively, the Court Should Modify the Preliminary Injunction Order By Increasing the Required Bond Substantially

For the reasons stated above, Mr. Hernandez and Mr. Gaffey believe the Court should vacate its preliminary injunction. In obtaining relief, Plaintiffs told this Court one thing. Then, in a secretive and egregious manner, Plaintiffs immediately turned around and did the exact opposite.

Mr. Hernandez and Mr. Gaffey urge the Court to vacate the preliminary injunction, but in the event the Court does maintain the preliminary injunction, they respectfully request that the Court increase the required bond to reflect the increased potential damage and harm to Messrs. Hernandez and Gaffey. In *Blumenthal*, the district court (as in this case) set a $100,000 bond. As the Second Circuit noted, expedited arbitration hearings took place in that case as well.

Plaintiffs, however, through their *ex parte* contacts with FINRA, appear to have succeeded in delaying the expedited hearings involving Mr. Hernandez and Mr. Gaffey until at least May 20; more than *twice* as long as Plaintiffs represented to the Court. The longer the injunction, the more damages Messrs. Hernandez and Gaffey will sustain. Therefore, at a minimum, the bond should be at least $250,000.

#1301505 v1
105839-62783

Respectfully, however, the bond should be set considerably higher. Plaintiffs' *ex parte* contacts with FINRA were directly at odds with their explicit representations to the Court. Plaintiffs have not even complied with their obligations under the Order to post a bond. Moreover, in setting the bond at $100,000,[4] the Court did not have the benefit of the many FINRA arbitration awards denying permanent injunctive relief, or Plaintiffs' *own admission that the arbitrators in this very case will be free to "alter" the injunction and "are not required to be lawyers or to strictly apply case law."*

In short, if (and only if) the Court denies the motion to vacate, Mr. Hernandez and Mr. Gaffey request that Plaintiffs be required to post a bond in the amount of $1 million.

## CONCLUSION

For all of the foregoing reasons, Messrs. Hernandez and Gaffey respectfully request that the Court vacate its preliminary injunction or, in the alternative, require Plaintiffs to post a bond of $1 million.

---

[4]     Judge Keenan required a bond in this amount based upon the damages the departing representatives could sustain in 1990. Adjusted for inflation, this $100,000 bond likely would exceed $300,000 today.

#1301505 v1
105839-62783

Dated:  April 21, 2008
        New York, New York

**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
(212) 613-2000
PSaso@gibbonslaw.com

Paul A. Saso

*Attorneys for Defendants Marcus Hernandez and
Sean J. Gaffey*

Of Counsel:
Christopher C. Coss
Thomas J. Momjian
COSS & MOMJIAN, LLP
111 Presidential Blvd., Suite 233
Bala Cynwyd, Pennsylvania 19004
(610) 667-6800

10