UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
E*TRADE FINANCIAL CORPORATION and : 
E*TRADE SECURITIES LLC, :
: 
           Plaintiffs, :
:
    v. :   No. 08 CV 2993 (RJH)
:
MARCUS J. HERNANDEZ, :
SEAN J. GAFFEY, and :
BANC OF AMERICA :
INVESTMENT SERVICES, INC. :
:
           Defendants. :
---------------------------------------------------------------- x

## DECLARATION OF HANS H. CHEN
## IN OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE

HANS H. CHEN declares as follows pursuant to 28 U.S.C. § 1746:

1. I am a mid-level associate with Cooley Godward Kronish LLP. I make this declaration in opposition to Defendants' Order to Show Cause.

2. Cooley Godward Kronish LLP represents Plaintiffs E*TRADE Financial Corporation and E*TRADE Securities LLC (collectively, "E*TRADE") in the above-captioned matter and an arbitration pending before FINRA Dispute Resolution, *E*TRADE Securities LLC v. Marcus J. Hernandez, et al.*, Arbitration No. 08-00871 (FINRA filed Mar. 24, 2008) (the "Arbitration"). I am working on these matters with Mr. Lobel.

3. On April 16, 2008, this Court signed an Order Granting Motion for Preliminary Injunction against defendants Marcus J. Hernandez, Sean J. Gaffey, and Banc of America Investment Services, Inc. (the "April 16 Order" [Docket No. 25]).

4. Mr. Hernandez, Mr. Gaffey, and Banc of America Investment Services, Inc. ("BOA") are three of the four respondents named in the above-referenced FINRA Arbitration.

361471 v1/RE

5. A motion for preliminary injunction in aid of arbitration is currently pending before the U.S. District Court for the Central District of California against the fourth Arbitration respondent, Joseph S. Reilly. A hearing on that motion is scheduled for May 5, 2008.

6. On April 17, 2008, I reviewed a letter sent on March 26, 2008, by Vanier Martin, a Case Administrator at FINRA Dispute Resolution, to Douglas P. Lobel (the "Letter," annexed hereto as Exhibit A). The Letter informed Mr. Lobel, a partner at Cooley Godward Kronish LLP, of FINRA's Rule requiring E*TRADE to notify FINRA Dispute Resolution within one business day of the court's issuance of the temporary injunction related to the Arbitration. The Letter also stated that pursuant to FINRA Rules, an Arbitration hearing on permanent injunctive relief would commence within 15 days of the issuance of the preliminary injunction.

7. The Letter concluded "Please inform FINRA Dispute Resolution as soon as the court rules on your request for temporary injunction *__and call me if you have any questions__*. (Emphasis added.) Beneath her signature, Ms. Martin provided her phone number, 212-858-4200.

8. My review of the Letter and FINRA Rules, however, provided no guidance on how to proceed where one court had enjoined some respondents named in an arbitration, but a second court had not yet ruled on enjoining the remaining respondent. In light of these procedural uncertainties and Ms. Martin's direction that I call her with any questions, I called her on the afternoon of April 17, 2008. Ms. Martin was unavailable, so I left two questions for her on her voicemail: (1) whether, in light of the pending preliminary injunction hearing for Mr. Reilly in California, we needed to inform FINRA Dispute Resolution of the April 16 Order within one business day of its issuance; and (2) whether the 15-day period to commence a hearing on permanent injunctive relief would begin running with the issuance of the April 16

Order against Mr. Hernandez and Mr. Gaffey or with the issuance of the preliminary injunction against Mr. Reilly in California.

9. When Ms. Martin had not returned my call, I called the same number and spoke to Judith Benjamin, a Case Assistant, who said that Ms. Martin was still not available. Ms. Benjamin asked for the Arbitration case number and whether she could answer my questions. I asked Ms. Benjamin the two questions I had left on Ms. Martin's voicemail. Ms. Benjamin responded that while I should send notice of and a copy of the April 16 Order that day, the 15-day period to commence a hearing would not begin to run until both injunctions had been issued against the Respondents.

10. Later that day, Ms. Martin returned my call. She and I discussed when the 15-day period to commence a hearing would begin to run. Ms. Martin recommended that E*TRADE indicate in its notice of the April 16 Order that the 15-day period to commence a hearing should begin to run only after both injunctions had been issued against the Respondents.

11. I communicated this information to Mr. Lobel, and I understand he thereafter wrote a letter to FINRA and copied defense counsel.

12. In my communication with FINRA, at no time did I argue or lobby for any particular outcome. The communications were purely to gather information.

13. To the best of my knowledge, I am the only person from my law firm to have contacted FINRA Dispute Resolution concerning the Arbitration and its related procedures prior to the Defendants' filing of their Order to Show Cause and Supporting Papers on April 21, 2008.

14. Immediately following the Court's issuance of the April 16 Order, I understand E*TRADE contacted its insurance broker concerning a surety bond. The next day, Thursday, April 17, 2008, I understand the insurance broker secured a bond (the "Bond," annexed hereto as

Exhibit B) and delivered it to E*TRADE, which received it on Friday, April 18, 2008. I instructed E*TRADE to forward the Bond to me in Virginia and received it the next business day, Monday, April 21, 2008. I arranged for the delivery of the Bond to New York and its filing with the Court on Tuesday, April 22, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of April, 2008, at Reston, Virginia.

_____
HANS H. CHEN

# EXHIBIT A



Financial Industry Regulatory Authority

**VIA OVERNIGHT MAIL**

March 26, 2008

Douglas P. Lobel, Esq.
Cooley Godward Kronish LLP
11951 Freedom Drive
Reston, VA 20190-5656

Subject:   FINRA Dispute Resolution Arbitration Number 08-00871
E*Trade Securities LLC  vs. Marcus J. Hernandez, Joseph S. Reilly, Sean J. Gaffey, and Banc of America Investment Ser

Dear Mr. Lobel:

Please be advised that parties seeking temporary injunctive relief must file for such relief in court and file for permanent injunction with FINRA Dispute Resolution. To review this rule, please visit FINRA Dispute Resolution's Web site, www.finra.org. Below is an overview of the rule and administrative procedures.

**Filing Process**
A party seeking a temporary injunction in court must simultaneously file a statement of claim and request for permanent injunctive relief and other relief in arbitration. That party must serve the statement of claim on all other parties at the same time and in the same manner as it was filed with FINRA Dispute Resolution. Service and filing must be made by overnight delivery service, facsimile, or hand delivery.

The party who files a statement of claim for permanent injunctive relief must pay a $2,500 non-refundable surcharge at the time the statement of claim is filed, in addition to the filing fee,[1] and member surcharge.

The rule does not require that the respondent file an answer. However, the respondent may do so either before or at the hearing. In any event, the respondent must file its Uniform Submission Agreement during the arbitrator selection process as described below.

**Court Grants Temporary Injunction**
If a court issues a temporary injunction, the party who obtained the temporary injunction must notify the Director within one business day of issuance of the order, by filing a copy of the order.

---

[1] Industry Code Rule 13900
Old Code Rule 10205

Investor protection. Market integrity.   Dispute Resolution   One Liberty Plaza   t  212 858 4200
Northeast Regional Office   165 Broadway   f  301 527 4873
27th Floor   www.finra.org
New York, NY
10006-1404

Once FINRA Dispute Resolution receives notice that a temporary injunction has been issued, a hearing on the request for permanent injunctive relief will begin within 15 days after the issuance of the court's order. Under the rule, "days" means calendar days, unless otherwise specified. [If a due date or deadline falls on a weekend or an FINRA holiday, the due date will be the next business day.] The arbitrator selection process will be expedited and the Director of FINRA Dispute Resolution will select the date and time for the hearing on the request for permanent injunction. The hearing will be conducted in person, unless all parties agree to or the panel grants a party's request for a telephonic hearing.

The panel may decide that a subsequent hearing on other issues, such as damages or a counterclaim, is necessary and may order more discovery and time for preparation by the parties. If there is a subsequent hearing, the panel will decide the time and place of the hearing and whether and when any additional pleadings are due.

**Court Denies Temporary Injunction**
If a court denies the request for temporary injunction, the case will be processed under NASD Rules.[2]

**List Selection**
The arbitrator selection process varies, depending on whether the claim requires a majority public panel or an all non-public panel. Below is an explanation of both processes.

Public Panel Cases
If your case requires a majority public panel, you will receive a list of 9 arbitrators; 6 public and 3 non-public. At least 4 of the 9 arbitrators will be arbitrators who have experience litigating injunctive relief cases. The remaining 5 arbitrators will be selected from FINRA Dispute Resolution's general roster. Parties are entitled to unlimited challenges for cause. However, each party has only two strikes, one strike against the public arbitrators, and one strike against the non-public arbitrators. If the same counsel represents more than one party, those parties collectively have only two strikes. If a party improperly exercises its strikes by striking two public arbitrators, and fails to correct it when requested, FINRA Dispute Resolution will interpret this to mean that the party has exercised only one strike against the public arbitrator and the second arbitrator is the party's least preferred arbitrator. If a party fails to rank the arbitrators, FINRA Dispute Resolution will interpret this to mean that the party has no objection to any arbitrator on the list and has ranked the arbitrators in the order they appear on the list.

Non-Public Panel Cases
If your case requires an all non-public panel, you will receive a list of 7 arbitrators, 3 of whom will be arbitrators who have experience litigating injunctive relief cases. The remaining 4 will be arbitrators from FINRA Dispute Resolution's general roster. Parties are entitled to unlimited challenges for cause, but each party is entitled to one strike. If the same counsel represents more than one party, those parties have only one strike.

In both public and non-public panel cases, parties must rank arbitrators on the list in order of preference, with 1 being the highest. Parties must return the completed list so that FINRA Dispute Resolution receives it within <u>three calendar days after it has been received.</u> Again, if the due date

---

[2]Customer Code Rule 12302 and Rule 12402
Industry Code Rule 13302 and Rule 13402
Old Rule 10314 and Rule 10308

falls on an FINRA holiday or weekend, then the due date is the next business day. If a party fails to submit its list by the due date, FINRA Dispute Resolution will assume that the party has no objection to any arbitrator on the list.

Once FINRA Dispute Resolution receives the parties' lists, it will consolidate them and appoint a panel based upon the parties' highest rankings. If a panel cannot be appointed from the consolidated list or if no arbitrators remain on the list then FINRA Dispute Resolution will appoint a panel by selecting the next available arbitrator on our roster.

**Chairperson Selection**
After the parties receive notice of the panel, they will have <u>1 business day</u> to advise FINRA Dispute Resolution of their unanimous agreement on which arbitrator should serve as the chairperson. If the parties cannot agree, FINRA Dispute Resolution will try to appoint as chairperson the lawyer with experience litigating injunctive relief cases and whom the parties have ranked the highest. If that is not possible, FINRA Dispute Resolution will appoint a chairperson pursuant to NASD Rules.[3]

**Arbitrator Honoraria and Expenses and Arbitration Fees**
The rule provides that arbitrators who hear injunctive relief cases will receive a higher honoraria for the hearing on the permanent injunction and that parties will be jointly responsible for paying the arbitrators the difference between FINRA Dispute Resolution's normal honoraria and the honoraria required under this Rule. Also, parties will be jointly responsible for paying the reasonable travel expenses and costs of an arbitrator who has to travel outside his or her assigned hearing locations for the hearing on the permanent injunction, damages, and other issues. The arbitrators may reallocate this assessment in their award. If a member firm fails to pay these fees, FINRA Dispute Resolution will debit the firm's CRD account.

Please inform FINRA Dispute Resolution as soon as the court rules on your request for temporary injunction and call me if you have any questions.

Very truly yours,

Vanier Martin
Case Administrator
212-858-4200  Fax: 301-527-4904

VM:stm:LC37A
idr:03/04//2008

CC:
    John O. Lukanski, Esq., Banc of America Investment Services, I
    Wolff & Samson PC, One Boland Drive, West Orange, NJ 07052

    Tom Momjian, Esq., Sean Joseph Gaffey
    Cross & Momjian, 111 Presidential Boulevard, Suite 223, Bala Cynwyd, PA 19004

---

[3] Industry Code Rule 13804(b)(c)
Old Code Rule 10308(e)

Tom Momjian, Esq., Marcus John Hernandez
Cross & Momjian, 111 Presidential Boulevard, Suite 223, Bala Cynwyd, PA 19004

Joseph Scott Reilly
3314 Sage Street, Tustin, CA 92782

RECIPIENTS:
Douglas P. Lobel, Esq., E*Trade Securities LLC
Cooley Godward Kronish LLP, 11951 Freedom Drive, Reston, VA 20190-5656

# EXHIBIT B

**Safeco.**

Safeco Insurance Companies
Safeco Plaza
Seattle, WA 98185

EFFECTIVE DATE: 04/17/08

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 4/22/08

Bond 6556878

PREMIUM: $1,000.00

E*TRADE FINANCIAL CORPORATION AND
E*TRADE SECURITIES LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
NO. 08 CV 2993 (RJH)

Plaintiff

MARCUS J. HERNANDEZ,    vs.
SEAN J. GAFFEY, AND
BANC OF AMERICA
INVESTMENT SERVICES, INC.

**PRELIMINARY INJUNCTION**

Defendants

WHEREAS, by Order of the above entitled Court, Plaintiff E*TRADE FINANCIAL CORPORATION AND E*TRADE SECURITIES LLC , was required to file an undertaking in the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) ************************************************** DOLLARS as a condition for a preliminary injunction to be in effect restraining and enjoining the above named Defendant MARCUS J. HERNANDEZ, SEAN J. GAFFEY, AND BANC OF AMERICA INVESTMENT SERVICES, INC. , from the commission of certain acts as more fully set forth in said order.

NOW, THEREFORE, Safeco Insurance Company of America , a corporation organized and existing under the laws of the State of Washington and authorized to transact the business of Surety, as Surety, in consideration of premises and issuance of said preliminary injunction does hereby undertake to pay all costs and disbursements that may be decreed to the Defendant MARCUS J. HERNANDEZ, SEAN J. GAFFEY, AND BANC OF AMERICA INVESTMENT SERVICES, INC. and such damages not exceeding the amount of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) ****************************************** DOLLARS as the Defendant MARCUS J. HERNANDEZ, SEAN J. GAFFEY, AND BANC OF AMERICA INVESTMENT SERVICES, INC. may sustain by reason of said preliminary injunction if the same be wrongfully obtained and without sufficient cause.

IN WITNESS WHEREOF, we have set our hand and seal the 17TH day of APRIL , 2008 .

[SEAL: SAFECO INSURANCE COMPANY OF AMERICA — 1953]

Safeco Insurance Company of America

SURETY

BY: _Paul Boucher_
PAUL BOUCHER, ATTORNEY-IN-FACT



**POWER OF ATTORNEY**

Safeco Insurance Company of America
General Insurance Company of America
Safeco Plaza
Seattle, WA 98185

**KNOW ALL BY THESE PRESENTS:**   No. 11614

That SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, each a Washington corporation, does each hereby appoint

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*PAUL BOUCHER; LEONARD G. FODEMSKI; JANINA MONROE; TIMOTHY J. NOONAN; SUSAN THURSTON; RAE L. ZACHARY; Los Angeles, California\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.

IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA have each executed and attested these presents

this    26th    day of    July    , 2007

_Stephanie Daley-Watson_          _T A Mikolajewski_

**STEPHANIE DALEY-WATSON, SECRETARY**     **TIM MIKOLAJEWSKI, SENIOR VICE-PRESIDENT, SURETY**

**CERTIFICATE**
Extract from the By-Laws of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA:

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
(i) The provisions of Article V, Section 13 of the By-Laws, and
(ii) A copy of the power-of-attorney appointment, executed pursuant thereto, and
(iii) Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Stephanie Daley-Watson, Secretary of SAFECO INSURANCE COMPANY OF AMERICA and of GENERAL INSURANCE COMPANY OF AMERICA, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of said corporation

this    17TH    day of    APRIL    , 2008

 

_Stephanie Daley-Watson_

**STEPHANIE DALEY-WATSON, SECRETARY**

Safeco® and the Safeco logo are registered trademarks of Safeco Corporation.

S-0974/DS 4/05                                                                                                                WEB PDF

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Bond No. 6556878

On APRIL 17, 2008, before me, HEATHER WIN, a Notary Public in and for the above county, personally appeared PAUL BOUCHER who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she is Attorney-in-Fact of SAFECO INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the state of WASHINGTON, that the seal affixed to the foregoing instrument is the corporate seal of the said corporation, that the instrument was signed, sealed, and executed in behalf of said corporation by authority of its Board of Directors, and further acknowledged the said instrument and the execution thereof to be the voluntary act and deed of said corporation by his voluntarily executed.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

IN WITNESS WHEREOF, I have hereunto subscribed by name and affixed my official seal the day and year first above written.

My Commission Expires: JUNE 17, 2010            _____
                                                  Notary Public

HEATHER WIN
Commission # 1675769
Notary Public - California
Los Angeles County
My Comm. Expires Jun 17, 2010