UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x

E*TRADE FINANCIAL CORPORATION and :
E*TRADE SECURITIES LLC, :
:
           Plaintiffs, :
:
     v. : No. 08 CV 2993 (RJH)
:
MARCUS J. HERNANDEZ, :
SEAN J. GAFFEY and BANC OF :
AMERICA INVESTMENT :
SERVICES, INC., :
:
         Defendants. :
:
------------------------------------------- x

## SUPPLEMENTAL DECLARATION OF DOUGLAS P. LOBEL
## IN OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE

     1.     Attached to this declaration as **Exhibit 12** is a true and correct copy of

E*TRADE's **Letter to FINRA Dispute Resolution** filed on April 25, 2008 (the "Letter") in the

arbitration styled *E*TRADE Securities LLC v. Marcus J. Hernandez, Joseph S. Reilly, Sean J.*

*Gaffey, and Banc of America Investment Services, Inc.*, FINRA Dispute Resolution Arbitration

No. 08-00871 (the "Arbitration"). The Letter constitutes E*TRADE's request to FINRA Dispute

Resolution to extend the time to commence a hearing on permanent injunctive relief from May 1

to May 7, 2008 – a period of ***four business days***.

     I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed this 25th day of April, 2008, in Reston, Virginia.


                        /s/ Douglas P. Lobel
                          Douglas P. Lobel

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas P. Lobel, hereby certify that on the 25th day of April, 2008, Supplemental Declaration Of Douglas P. Lobel In Opposition To Defendants' Order To Show Cause was filed through the ECF system and will be sent electronically, via the ECF system, to the following registered participants, as also identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants in this case to my knowledge and belief.

Paul A. Saso, Esq.
GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
Tel:  (212) 613-2000

and

Christopher C. Coss, Esq.
Thomas J. Momjian, Esq.
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 233
Bala Cynwyd, Pennsylvania 19004
Tel:  (610) 667-6800

*Counsel for Marcus J. Hernandez and Sean J. Gaffey*

William E. Goydan, Esq.
WOLFF & SAMSON PC
140 Broadway, 46th Floor
New York, New York 10005
Tel:  (212) 973-0572

*Counsel for Banc of America Investment Services, Inc.*

/s/ Douglas P. Lobel
Douglas P. Lobel

# EXHIBIT 12



Douglas P. Lobel

T: (703) 456-8019
dlobel@cooley.com

April 25, 2008

<u>*Via Electronic Mail*</u>

Vanier Martin, Case Administrator
FINRA Dispute Resolution
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006-1404

>    Re:    **FINRA Dispute Resolution Arbitration Number 08-00871**
>           ***E\*TRADE Securities LLC vs. Marcus J. Hernandez, Joseph S. Reilly,***
>           ***Sean J. Gaffey, and Banc of America Investment Services, Inc.***

Dear Ms. Martin:

This letter constitutes Claimant E\*TRADE Securities LLC's ("E\*TRADE") (1) response to Respondents' Motion to Sever, filed Friday, April 18, 2008, and Opposition to Respondents' Demand for a May 1st Hearing; and (2) request that FINRA exercise its authority under FINRA Industry Rule 13207(c) to extend the May 1st arbitration deadline for "good cause" by **only four business days**, until May 7, 2008.

E\*TRADE has named three individual Respondents in its Statement of Claim. E\*TRADE is entitled to conduct a single consolidated hearing involving all three Respondents because they all acted in concert jointly to steal E\*TRADE's proprietary information; E\*TRADE would be severely prejudiced by severance of its claims. However, given the different schedules of the New York and California federal courts, all of the Respondents cannot be brought into a single hearing within 15 days of the New York court's injunction. Therefore, in order to allow E\*TRADE to have a single consolidated hearing, FINRA should exercise its authority under



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 2

Rule 13207(c) to modify the 15-day deadline for "good cause."  Good cause exists to slightly

extend the 15-day rule here, because strict adherence to the rule leads to a highly prejudicial

result – not all of the named Respondents would attend the hearing, and E*TRADE would be

required to conduct multiple arbitrations in multiple fora on identical claims.  E*TRADE

proposes that FINRA hold the consolidated hearing *with all three Respondents on May 7, 2008*.

*(1) FINRA Rules Give E\*TRADE The Right To Conduct A Single, Consolidated*

*Hearing Because The Respondents Acted In Concert To Steal E\*TRADE's Proprietary*

*Information.*  The premise of Respondents' motion to sever is completely false; they wrongly

assert that E*TRADE's claims against each of them are separate and severable.  The truth is –

and E*TRADE submits evidence below proving it – that the Respondents worked closely

together to jointly steal E*TRADE's trade secrets.  They were best friends for years in

E*TRADE's New York office and, even after one of them left for California, they were in

constant communication with each other, plotting their "exodus" from E*TRADE.  E*TRADE's

claims are identical against each of the Respondents, and thus the legal issues are identical too.

Severance of E*TRADE's claims against them would severely prejudice E*TRADE.  Multiple

hearings will not only be costly and inefficient, but they will severely impair E*TRADE's ability

to present its theory of the case.  Under FINRA Rule 13313(a), E*TRADE is entitled to a single

hearing against all of the Respondents, and Respondents' motion to sever should be denied.

*(2) FINRA Should Find "Good Cause" Exists To Hold A Single Hearing On May 7,*

*Modifying The 15-Day Rule Respondents Cite.*  In FINRA's April 24, 2008 letter to all of the



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 3

parties, FINRA states that it will try to hold the expedited hearing by May 1, 2008, which,

pursuant to Rule 13804(b), is 15 days after the federal court in New York issued a preliminary

injunction.  The letter, however, leaves open the question of whether Respondent Reilly will

attend the Hearing.  Reilly is not subject to the court's Injunction Order because he a defendant

in a separate lawsuit that E*TRADE has pending against Reilly in California.  The federal court

in California will not hear E*TRADE's motion for preliminary injunction against Reilly until

***May 5th***.  Therefore, as things stand, it is unclear if FINRA can compel Reilly to appear at the

May 1st hearing.

For that very reason, Respondents repeatedly demand that FINRA hold a hearing on

May 1st.  Respondents know that having a hearing on that date would force a *de facto* severance

of E*TRADE's claims without actually having to prevail on their motion to sever.

Strictly adhering to the May 1st date would be highly prejudicial to E*TRADE because

it would elevate a mere procedural rule (setting the time for a hearing) over an important

substantive rule (guaranteeing E*TRADE a single hearing against all of the Respondents, who

acted in concert).  FINRA should not treat the 15-day rule as an inflexible, mandatory deadline

and thereby effectively sever E*TRADE's claims against Respondent Reilly merely so that

Respondents Hernandez and Gaffey are at a hearing within 15 days.  That elevates form over

substance.  FINRA's "good cause" rule allows FINRA to modify procedural deadlines where

they work an injustice, as here.  As the New York court found, Respondents have been trampling

E*TRADE's rights by stealing proprietary information and using it against E*TRADE in



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 4

violation of contracts and laws.  FINRA should not sanction Respondents' further trampling of

E*TRADE's rights by severing the hearing into multiple duplicative actions.

*(3) Request For Telephonic Hearing And Expedited Consideration By The Panel.*

Because FINRA intends to schedule the arbitration on May 1st, E*TRADE requests a final

determination by the Panel as soon as it is appointed, and ***not later than Tuesday, April 29th***.

***E*TRADE also requests a telephonic hearing with the Panel on this issue.***

For these reasons, FINRA should deny Respondents' motion to sever, and hold a single

hearing in New York, NY, starting on May 7, 2008, with all Respondents present.

## I.    E*TRADE's Statement Of Claim Asserts Joint Conduct By Respondents

Respondents' severance motion is based on the fiction that the three individual

Respondents acted independently of each other.  That is false, and E*TRADE has direct

evidence disproving it.  In fact, all three individual Respondents worked closely together for

weeks as a team to steal and misuse E*TRADE's proprietary information.  Respondents know

that dividing E*TRADE's claim into multiple proceedings will improve their odds of avoiding

liability, while at the same time imposing unnecessary costs on E*TRADE.

E*TRADE has a right to have a single hearing, and FINRA should enforce that right.

As even Respondents acknowledge, FINRA Rule 13313(a) gives E*TRADE the right to have a

single hearing against multiple respondents, even those located 3,000 miles apart,  where:



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 5

      (a) …the claims contain any questions of law or fact common to all
          respondents and:

            The claims are asserted against the respondents jointly and
            severally; or

            The claims arise out of the same transaction or occurrence, or series
            of transactions or occurrences.

E*TRADE's Statement of Claim easily satisfies the standard in Rule 13313(a) for three separate reasons, each of which independently entitles E*TRADE to have a single hearing and not be forced to conduct multiple, wasteful hearings.

*First*, E*TRADE's Statement of Claim presents numerous common (and indeed identical) facts against all Respondents. So that the record is clear about Respondents' teamwork and unity of effort and purpose, E*TRADE below presents substantial proof that individual Respondents misappropriated E*TRADE's confidential materials after their coordinated departures and then defamed their former employer to help each other poach E*TRADE clients. This reason alone justifies a single hearing.

*Second*, E*TRADE's Statement of Claim also contains common questions of law. First, all four Respondents have been sued for the same claims, with only minor differences between each Respondent. For example, E*TRADE alleged that Hernandez, Reilly, and Gaffey breached their employment contracts and fiduciary duty of loyalty. E*TRADE alleged that these three Respondents plus Banc of America Securities, Inc. ("BOA") misappropriated E*TRADE's trade secrets, converted E*TRADE's property, and defamed E*TRADE. E*TRADE alleged that the four Respondents also committed unfair competition and tortious interference with E*TRADE's



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 6

prospective business relationships, violated the Computer Fraud and Abuse Act, 18 U.S.C.

§ 1030, and violated standards of commercial honor and principles of trade, FINRA/NASD Rule

2210.  In light of these common charges alleged against all Respondents, there can be no

question that E*TRADE's Statement of Claim contains common questions of law.

Other common questions of law raised by E*TRADE's Statement of Claim include the

following:

- Whether the individual Respondents' contact with their former E*TRADE clients constituted mere announcements of their move or, as E*TRADE alleges, impermissible solicitations;

- The extent to which E*TRADE's client information constitutes protectable trade secrets;

- The degree to which the individual Respondents' use or appropriation of E*TRADE's client information constitutes actionable misuse or misappropriate of trade secrets; and

- The extent to which Respondents' statements about E*TRADE to their former clients constitutes actionable defamation.

*Third*, E*TRADE's claims arise out of the same transaction or occurrence:  the

coordinated raid by respondent BOA of the individual Respondents, who, once at BOA, used

fear mongering and lies to poach their former E*TRADE clients.  E*TRADE alleges this pattern

of joint activity throughout its Statement of Claim:

- "Jointly, [Respondents] engaged in a campaign to smear E*TRADE and create panic among its customers using E*TRADE's confidential customer information."  (Statement of Claim at 1.)



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 7

- "In clear coordination, the three individual Respondents all abruptly resigned from E*TRADE within a short time early this year.  All three of them immediately went to work for the same employer, Respondent BOA.  All three of them took E*TRADE's customer lists, and then all three of them immediately began inundating E*TRADE's customers on those lists with solicitations to transfer their E*TRADE accounts to BOA.  All three of them induced fear in E*TRADE's customers by making false statements about E*TRADE's solvency and the security of customers' deposits.  These events are hardly a coincidence."  (*Id*. at 9.)

- "Respondents did not merely steal customer information to call the customers.  They also engaged in a campaign of scare tactics to coerce customers to transfer their business from E*TRADE to BOA."  (*Id*. at 12.)

- "Consequently, the individual Respondents knew they needed leverage to persuade E*TRADE's customers to leave E*TRADE for BOA.  As a result, they engaged in a coordinated campaign of fear, telling E*TRADE's customers that E*TRADE was possibly insolvent."  (*Id*.)

This reason too separately entitles E*TRADE to have a single hearing for its claims.

As E*TRADE demonstrates below, significant evidence supports all of the assertions in

its Statement of Claim that Respondents acted in concert.

## II.    E*TRADE Is Entitled To A Single Hearing Because Evidence Demonstrates That All Individual Respondents Acted In Concert

A single hearing is necessary because the three individual Respondents are in league

with each other and their new employer, BOA, and acted in concert to steal E*TRADE's

proprietary information and defame E*TRADE to siphon customers.  The evidence will show

that:

- The individual Respondents are old friends who all worked together at E*TRADE's New York office and consulted with one another for years;



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 8

- They all discussed their gripes over E*TRADE and concocted a plan together to move to BOA;

- Hernandez, the ring leader, referred the others to his contacts at BOA; and

- All three individual Respondents retained the same lawyer once it became clear that legal action would follow.  He represents them here.

Hernandez, Reilly, and Gaffey are the closest of friends.  Hernandez and Reilly began their careers together at E*TRADE in the same small office of approximately twenty financial advisors.  From October 2004 until May 2006, all three worked out of that New York office.  After Reilly transferred to E*TRADE's California office in May 2006, Hernandez and Gaffey remained co-workers in New York until Hernandez transferred to E*TRADE's King of Prussia branch on November 20, 2007.

Even with Reilly's transfer to California, all three individual Respondents communicated constantly, sometimes hourly or more frequently, exchanging multiple cell phone conversations, e-mails, and instant messages ("IMs") nearly every day.[1]  Records will show that twenty-two percent of Hernandez's IM messages from December 2007 through January 2008 were with Reilly in California – a much higher percentage than his communications with any other E*TRADE employee.  Hernandez communicated with approximately sixty different E*TRADE employees over IM, yet nearly a quarter of the communications were with Reilly.  Despite the

---

[1] Losing sight of the fact that E*TRADE could monitor their conversations over company IM, Hernandez, Reilly, and Gaffey discussed pieces of their plan on several occasions.  They were cautious, however, not to discuss their plan over e-mail.  Reilly actually indicated in an e-mail that he could not discuss his work problems in detail over company e-mail:  "Work is what it is – no comment on work email."  (E-mail from Reilly to Victoria Dobson (Dec. 20, 2007).)  However, apparently believing that their IMs were more private, they communicated more freely over IM.



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 9

time difference between their offices, the two friends managed to chat online daily, and typically

for hours at a time.

This tight bond was more than a typical working relationship. When they made the

decision that it was time to leave E*TRADE, they plotted a way to be hired by the same

brokerage. Their planning paid off, as the two moved to BOA together in late January.

Hernandez, the largest producer, was the first to leave and acted as the liaison between

BOA and Gaffey and Reilly. Hernandez helped BOA raid E*TRADE of the two Respondents.

Hernandez provided his friends Reilly and Gaffey with contacts at BOA and recommended them

for jobs in their respective locations. Although Hernandez was located in Pennsylvania, he

hunted down BOA contacts for Reilly in California and for Gaffey in New Jersey. Hernandez

played an integral role in the others' departures from E*TRADE and arrivals at BOA.

Additional proof will show that:

- In the months before their departures, Hernandez and Reilly, still close friends despite being on opposite sides of the country, regularly complained about E*TRADE and eventually developed a plan to leave the company together. Concerned by some of their highest-asset clients leaving E*TRADE after a Citigroup analyst wrote a harsh report on E*TRADE, Respondents began discussing how best to prepare for a departure to another firm. For instance, Hernandez and Reilly discussed pessimistic financial reports about E*TRADE in early December. (IMs between Hernandez and Reilly (Dec. 3, 2007).) Just days later, Hernandez and Reilly discussed job security concerns (IMs between Hernandez and Reilly (Dec. 5, 2007).)

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|---|---|---|---|
| Hernandez, Marcus | Reilly, Scott | 12/5/2007 17:20 | had a conversation wtih murph over email |
| Reilly, Scott | Hernandez, Marcus | 12/5/2007 17:21 | toa |
| Reilly, Scott | Hernandez, Marcus | 12/5/2007 17:21 | bout what? |
| Hernandez, Marcus | Reilly, Scott | 12/5/2007 17:21 | asked me how i was doing |



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 10

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|--------|-----------|--------------|---------|
| Hernandez, Marcus | Reilly, Scott | 12/5/2007 17:21 | told him i was concerned about job secuyrity but beated around the bush |
| Hernandez, Marcus | Reilly, Scott | 12/5/2007 17:21 | he didnt really reasure me |
| Hernandez, Marcus | Gutman, Adam | 12/5/2007 21:14 | the etfc thing is killing me |
| Hernandez, Marcus | Gutman, Adam | 12/5/2007 21:14 | dont know what to do |
| Hernandez, Marcus | Gutman, Adam | 12/5/2007 21:14 | the complicated part is that you cannot join another firm between dec 15-jan 1st so if something happens between then it could hurt big time |

- In early December, Hernandez, who by then had already made up his mind to leave E*TRADE, began coaching Reilly on how do the same.

    1.  Hernandez told Reilly that he had obtained records of his total production to be prepared for job interviews and that Reilly in order to interview at BOA, Reilly needed to do the same.  (IMs between Hernandez and Reilly (Dec. 4, 2007).)

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|--------|-----------|--------------|---------|
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 18:59 | I asked Gil and Mike Ohlsen for all the 12 b 1s and arps that i have done for the year |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:00 | so i can get an idea of my total production |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:01 | you did huh |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:01 | gutsy |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:01 | how so? |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:01 | i told him the truth.  Said that just in case I want to be able to document my successes |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:02 | I'd say it's tipping your hand a bit |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:02 | did the same thing last year |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:02 | dont care. |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:02 | TRUE |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:02 | can't blame us for being cynical and prepared.... |
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:02 | they should give it to us.  He should understand that we are all in jeoperdy and that it doesnt hurt to be prepared |
| Reilly, Scott | Hernandez, Marcus | 12/4/2007 19:02 | you're right |



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 11

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|--------|-----------|--------------|---------|
| Hernandez, Marcus | Reilly, Scott | 12/4/2007 19:03 | maybe he is on his way to pa to fire me now :) |

2.   On December 6, 2007, Hernandez and Reilly discussed obtaining and reviewing their current employment agreements in preparation for any issues that might result from new employment.  (IMs between Hernandez and Reilly (Dec. 6, 2007).)

| SENDER NAME | RECIPIENT NAME | MESSAGE DATE | CONTENT |
|-------------|----------------|--------------|---------|
| Reilly, Scott | Hernandez, Marcus | 12/6/2007 21:26 | you hear GG asked for his employee agreement? |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:28 | glen |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:28 | or greenfield |
| Reilly, Scott | Hernandez, Marcus | 12/6/2007 21:28 | glen |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:29 | rookie |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:29 | why didnt he just ask me |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:29 | i have that shit |
| Reilly, Scott | Hernandez, Marcus | 12/6/2007 21:29 | me too |
| Reilly, Scott | Hernandez, Marcus | 12/6/2007 21:29 | me too |
| Hernandez, Marcus | Reilly, Scott | 12/6/2007 21:29 | no wonder bc called me today concerned about attrition |

3.   Soon before Hernandez left for BOA, he and Reilly discussed what would happen to the contents of their employee stock purchase plans when both left.  (IMs between Hernandez and Reilly (Jan. 7, 2008).)

| SENDER NAME | RECIPIENT NAME | MESSAGE DATE | CONTENT |
|-------------|----------------|--------------|---------|
| Hernandez, Marcus | Reilly, Scott | 1/7/2008 18:47 | do you know how that works your espp if you leave? |
| Hernandez, Marcus | Reilly, Scott | 1/7/2008 18:47 | just curious |
| Reilly, Scott | Hernandez, Marcus | 1/7/2008 18:47 | they're ours to transfer |

- E*TRADE records show Reilly plotting with Gaffey as well.  On December 4, 2007, hoping to avoid E*TRADE's detection of their conspiracy, Reilly and Gaffey scheduled a cell phone call to discuss their ability to compete with E*TRADE, notwithstanding their employment contracts.



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 12

| Sender | Recipient | Message Date | Content |
|---|---|---|---|
| Reilly, Scott | Gaffey, Sean | 12/4/2007 18:42 | call my cell later |
| Gaffey, Sean | Reilly, Scott | 12/4/2007 18:42 | done deal |
| Reilly, Scott | Gaffey, Sean | 12/4/2007 21:35 | we need to talk about the non-compe |
| Gaffey, Sean | Reilly, Scott | 12/4/2007 21:35 | Definitely |
| Gaffey, Sean | Reilly, Scott | 12/4/2007 21:35 | call me |

- Throughout December, Hernandez and Gaffey also coordinated their departure, noting E*TRADE attrition and speculating whether other E*TRADE employees would begin quitting.  (IMs between Hernandez and Gaffey (Dec. 6, 2007).)

| Sender | Recipient | Message Date | Content |
|---|---|---|---|
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:45 | have you heard any news about ETFC? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:45 | no |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:46 | but BC called me today |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:46 | and murph emailed me yesterday |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:46 | what did he have to say for himself? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:46 | both seemed to be concerenced about attrition |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:46 | I heard about Murph email |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:46 | how is BC concerned about attrition? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:46 | he came out and said it |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:46 | what did he say exactly? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:47 | said his biggest concern is that people get concerened about et and just start quiting |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:47 | can't blame him, I'm surprised it hasn't happened yet |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:48 | two options for anyone here is wait and see what happens which means you can be stuck w/o a job |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:48 | or do some contingency planning |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:48 | what did MM say or are you referring to the email you had back and forth w/ him? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:49 | the one back and forth |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:49 | just said do your best |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:49 | keep head down |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:50 | brendon was a little more reassuring |



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 13

| Sender | Recipient | Message Date | Content |
|---|---|---|---|
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:50 | promised as much as he can |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:50 | think now would be a good time to ask for an increase in payout?  :) |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:50 | said he doesnt think there will be layoffs and if anyone it iwll likely be him |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:50 | no, i am done asking for anything |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:50 | i asked two months ago |
| Gaffey, Sean | Hernandez, Marcus | 12/6/2007 21:50 | what, for an increase in payout? |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | for six months for the move |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | and i also asked for options |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | both shot down |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | not really shot down. they said they will consider it down the road |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | first they asked if i was planning on leaving if i said no |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | *of course i said i wasnt* |
| Hernandez, Marcus | Gaffey, Sean | 12/6/2007 21:51 | and they tabled it |

- By early January, Hernandez was so committed to joining BOA that on January 8, 2007, he risked others at E*TRADE learning of his departure by asking a co-worker about how BOA was regarded relative to other brokerages and even admitted to his plans to work for BOA.  (IMs between Hernandez and Daman Cuzmanes (Jan. 8, 2008).)

| Sender | Recipient | Message Date | Content |
|---|---|---|---|
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:03 | do you think boa has a good name? |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:03 | vs the big guys, morgan, merrill, smith barney etc |
| Cuzmanes, Daman | Hernandez, Marcus | 1/8/2008 14:04 | why.. are you goign to work with them |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:04 | not sure |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:04 | really just getting back up plans |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:04 | just in case |
| Cuzmanes, Daman | Hernandez, Marcus | 1/8/2008 14:04 | and yes of course.. you work for etrade |
| Cuzmanes, Daman | Hernandez, Marcus | 1/8/2008 14:04 | can't get much worse |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:04 | true!!! |
| Cuzmanes, Daman | Hernandez, Marcus | 1/8/2008 14:04 | if you could get out before they change the payment structure of ouyr group.. |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:05 | ha ha |



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 14

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|---|---|---|---|
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:05 | dude |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:05 | i dont think they can aford to do that |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:06 | they would not retain anyone |
| Cuzmanes, Daman | Hernandez, Marcus | 1/8/2008 14:06 | I do not think they care |
| Hernandez, Marcus | Cuzmanes, Daman | 1/8/2008 14:06 | people may be out even if they dont change |

- On January 8, 2008, only ten days before Hernandez's sudden departure from E*TRADE, Respondents coordinated their efforts in anticipation of their joint "exodus" in a manner that they hoped "to parlay" to their own benefit, so it worked out "perfectly," even if they harmed E*TRADE in doing so.

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|---|---|---|---|
| Reilly, Scott | Hernandez, Marcus | 1/8/2008 21:49 | got to be an exodus soon |
| Hernandez, Marcus | Reilly, Scott | 1/8/2008 21:50 | i honestly would be very upset to leave this place |
| Hernandez, Marcus | Reilly, Scott | 1/8/2008 21:50 | as sad and soft as it seems |
| Reilly, Scott | Hernandez, Marcus | 1/8/2008 21:50 | of course, me too |
| Reilly, Scott | Hernandez, Marcus | 1/8/2008 21:50 | was a great start for us |
| Reilly, Scott | Hernandez, Marcus | 1/8/2008 21:50 | time to parlay it before we go bk |
| Hernandez, Marcus | Reilly, Scott | 1/8/2008 21:50 | if things go our way it can work out perfectly actually |

- Hernandez actively assisted BOA in hiring his friend Reilly. On January 9, 2007, after Hernandez had already committed to join BOA, Hernandez urged Reilly to contact a BOA representative in its Newport, California branch. Hernandez abruptly resigned from E*TRADE nine days later. Reilly, following Hernandez's urging, quit E*TRADE and began working for BOA one week later – not coincidentally, in BOA's Newport office.

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|---|---|---|---|
| Hernandez, Marcus | Reilly, Scott | 1/9/2008 21:17 | my guy emailed me |
| Hernandez, Marcus | Reilly, Scott | 1/9/2008 21:17 | has a different guy for you to call |
| Hernandez, Marcus | Reilly, Scott | 1/9/2008 21:17 | his boy in Newport |
| Hernandez, Marcus | Reilly, Scott | 1/9/2008 21:21 | call that guy now |

- Hernandez also facilitated BOA's hiring of Gaffey. Just one day after discussing his own possible switch to BOA over company IMs, Hernandez and Gaffey discussed Gaffey's own move to BOA. Feeling anxious about E*TRADE's declining stock price, Gaffey implored Hernandez to "hook me up." Not only did



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 15

Gaffey know that Hernandez was on the verge of leaving E*TRADE, but he also knew that Hernandez could assist him in transferring to BOA.

Hernandez was happy to help his friend.  In addition to providing contacts, Hernandez even talked about Gaffey to his new employer, writing that he had "talked you up a little bit" with BOA.  (IM from Hernandez to Gaffey (Jan. 8, 2008).)  Approximately one month later, Hernandez and BOA's plan succeeded, and Gaffey too became a BOA employee.

| SENDER | RECIPIENT | MESSAGE DATE | CONTENT |
|---|---|---|---|
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:08 | i wonder how much time we have |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:10 | I've never been really sacred before |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:10 | like sick to my stomach scared |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:10 | I am now |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:10 | i dont know how to handle it |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:10 | I'm all f'ed up |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:26 | hook me up |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:26 | *i did* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:26 | *i have the contact* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:31 | *sent* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:54 | text |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:54 | got it |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:54 | wonder if that would be a better option than NJ? |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:54 | the other i owe you tonight |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:54 | not sure |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:55 | this guy said that guy is one of the top guys |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:56 | text me that guys name so I can reference him |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:58 | done |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:58 | *thx* |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:58 | *i owe you one* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:58 | *no worries man* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:58 | *ill get you the other guy* |
| Hernandez, Marcus | Gaffey, Sean | 1/8/2008 17:58 | *talked you up a little bit* |
| Gaffey, Sean | Hernandez, Marcus | 1/8/2008 17:58 | *ok, thx* |



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 16

*This is just the tip of the iceberg.*  There cannot be any doubt that these Respondents

acted in concert in a common plan to violate their agreements, steal trade secrets, and escape to

their next adventure.

**III.     E*TRADE Would Be Severely Prejudiced By Severance Of Its Claims**

As explained in Arbitrator's Manual (Aug. 2007), p. 8, one of the critical factors in

considering a severance motion is "prejudice" to any party.  E*TRADE would be severely

prejudiced if it is forced to conduct two or three separate hearings against Respondents; by

contrast, Respondents would not be prejudiced at all by a single hearing.

Separate hearings impose numerous obstacles for E*TRADE and its witnesses.  First,

E*TRADE will have to put on largely the same case two or three times, of course at two or three

times the expense.  E*TRADE's case will consist of, among other things, descriptions of

E*TRADE's proprietary information (which would be the same for each hearing); evidence

about the Respondents' employment agreements and E*TRADE's substantial proprietary

information and computer-network policies (also, the same); and evidence of how Respondents

jointly conspired to leave E*TRADE, steal E*TRADE's information, and solicit E*TRADE

clients (also, the same).  About the only major issue that changes in E*TRADE's claims against

each Respondent are the individual client solicitations and the measure of damages – but that is

not an issue for the expedited hearing in May, which focuses only on a permanent injunction.

Forcing E*TRADE to repeat the same case two or three times not only increases the cost, it also

imposes pointless burdens on E*TRADE's witnesses (who will be the same in each case



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 17

hearing).  Respondents also obtain an unfair tactical advantage by hearing the same case three

times over and each time being able to try new strategies and tactics.  Ultimately, Respondents'

ability to vary their defense from hearing to hearing creates a grave danger that three different

panels will reach inconsistent results.  Furthermore, E*TRADE will ask for punitive damages,

and evidence of the Respondents' deliberate coordination of effort may give a single panel good

reason to impose higher damages on Respondents than if three separate panels heard the

evidence in pieces.  There is absolutely no reason E*TRADE should suffer all of these problems.

By contrast, Respondents are not prejudiced by a single hearing – they simply do not

want one.  They are long-time friends and certainly know each other well, and they acted in

unison to leave E*TRADE, join BOA, and steal E*TRADE's information and clients.  It should

come as no surprise they have to jointly defend themselves as well.  None have presented any

defenses that are unique or could not be raised with the other Respondents present at the hearing.

This factor further supports denial of Respondents' severance motion.

**IV.    FINRA Should Not Allow A Mere Procedural Rule To Force It To Sever
        E*TRADE's Claim, When E*TRADE Is Entitled To A Single Hearing**

The foregoing evidence demonstrates that Respondents acted in concert to jointly harm

E*TRADE.  Consequently, under Rule 13313(a) E*TRADE is entitled to a single hearing, and

FINRA should deny Respondents' motion to sever E*TRADE's claims into three hearings.

Forcing E*TRADE to prove its claims in three separate hearings would impose triple costs on

E*TRADE, would increase the odds of inconsistent results, would give Respondents the ability



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 18

to improve their defenses hearing to hearing, would harm E*TRADE's case for punitive

damages, and would impose needless burdens that are unjustified.

Respondents hope to force FINRA to sever E*TRADE's claims through the back door,

even though they are not entitled to it, by trying to enforce the 15-day rule.  Respondents act like

this 15-day rule should be FINRA's paramount concern and should control everything else.

E*TRADE respectfully suggests that Respondents are putting the cart before the horse.  The

most important decision facing FINRA is the substantive question of whether E*TRADE is

entitled to a single hearing.  Once FINRA decides that E*TRADE is entitled to a single hearing,

the particular date of that hearing should be a secondary concern.  Indeed, there is no guarantee

that all of the arbitrators (once they are selected) will even be available on the 15th day.  And

there is no magic about 15 days; the rule just as easily might have been written with 14 or 18

days.  The fundamental purpose of the 15-day rule is to ensure an ***expedited*** hearing.  As long as

Respondents obtain an expedited hearing, the purpose of the rule will be satisfied.

FINRA is not required to accept procedural dates and deadlines without any flexibility.

Without question, FINRA has the authority to modify the 15-day period.  FINRA Industry Rule

13207(c) permits the Director to extend or modify any deadline or time period set by the Code

for good cause:

> ***The Director may extend or modify any deadline or time period
> set by the Code for good cause. The Director may also extend or
> modify any deadline or time period set by the panel in
> extraordinary circumstances.***



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 19

Clearly, the scheduling dilemma created by the parallel federal court proceedings is a "good cause" that justifies a brief departure from the strict 15-day period Respondents advocate. Once FINRA concludes that E*TRADE is entitled to a single hearing, which E*TRADE proved above, then FINRA will automatically conclude that it cannot have the single hearing within the 15-day period. Measuring the 15 days from the New York court's injunction (issued April 16th) will force a hearing by May 1st, but the California court won't conduct a hearing until four days later (May 5th). Thus, if the single hearing is done on May 1st, then one of the Respondents (Reilly) may not be at the hearing because he will not be subject to any court injunction on May 1st. The Respondents will have just won their severance motion by default, even though they are not entitled to sever E*TRADE's claims.

The only logical solution is to hold an expedited hearing as soon as possible, *after* the California court's hearing on May 5th. Of course, E*TRADE is presuming it will prevail at that hearing; but the results in New York more than adequately support that notion.

E*TRADE proposes that FINRA conduct the single expedited hearing on *May 7, 2008*. That is merely *four business days after the 15-day period* in Rule 13804(b); but the fundamental purpose of the rule is still satisfied because the hearing will be expedited. This solution protects E*TRADE's interest, by having the single hearing to which it is entitled and at which all of the Respondents will be present; and it protects the Respondents' interests by affording them an expedited FINRA hearing, after their respective federal court hearings. This constitutes "good



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 20

cause" to move the May 1st deadline, which is unworkable and if enforced would prejudice

E*TRADE by forcing E*TRADE to lose its right to a single hearing.[2]

## V.    FINRA Should Conduct The Hearing In New York

As part of their scheme to split E*TRADE's joint claim into three duplicative hearings,

Respondents not only ask that Reilly's hearing be held in California but also that Hernandez's

hearing be held in Philadelphia.  This is window-dressing for Respondents' brazen effort to deny

E*TRADE its right to a single hearing.

New York is the appropriate site of the hearing.  E*TRADE's brokerage services are

headquartered there, so Respondents' conduct has harmed E*TRADE in New York.  Respondent

Gaffey works in New York.  Furthermore, Respondent Hernandez worked in New York for

*years* until very recently, transferring to Pennsylvania only two months before leaving

E*TRADE.  While he was in New York and before his transfer, he e-mailed client information to

his personal home address, and copied E*TRADE's proprietary information to his computer hard

drive off of the network, in violation of E*TRADE's written policies.  Finally, it is worth noting

that Hernandez did not contest the New York court's jurisdiction over him.  All of these reasons

point to New York as the appropriate site of the hearing.

Respondent Reilly complains that he will have to travel 3,000 miles for the hearing.  But

he was a willing co-conspirator with his buddies in New York; his voluntary actions breaching

his agreements with E*TRADE give E*TRADE the right to bring its claims against Reilly in the

---

[2]    *See Henry v. Department of Transp.*, 69 Fed. Appx. 478, 481 (2d Cir. 2003) (good cause to extend dates balances "the need for doing justice on the merits between the parties . . . against the need for maintaining orderly and efficient procedural arrangements.").



Vanier Martin, FINRA Case Administrator
April 25, 2008
Page 21


same hearing as the other Respondents. There will be one hearing, as E*TRADE has a right to,

so the one hearing will be in the most logical place, New York. That will force Reilly to travel,

but to say he does not have to attend merely because he has to take a flight would elevate a travel

issue over E*TRADE's established substantive right to a single hearing. It is also worth noting

that Reilly worked in New York for several years, so the New York arbitration is appropriate.

*        *        *        *

For these reasons, FINRA should deny Respondents' Motion to Sever and hold a single

hearing in New York, starting on May 7, 2008, with all Respondents present. To accede to any

other approach – separate hearings, or earlier dates – would deny E*TRADE its fundamental

right to have a single hearing, which FINRA's rules expressly grant. As the New York court

found, Respondents have been trampling E*TRADE's rights by stealing proprietary information

and using it against E*TRADE in violation of contracts and laws. FINRA should not sanction

Respondents' further trampling of E*TRADE's rights by severing the hearing into multiple

duplicative actions.

Thank you for your attention to this matter.

Respectfully yours,

Douglas P. Lobel

cc:    John O. Lukanski, Esq. (via e-mail)
       Thomas Momjian, Esq. (via e-mail)

361086v6•RE